CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 17 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil Action No. 7:04CR00021 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| WILLIAM THOMAS WARREN, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This case is before the court on several pre-trial motions from both the defendant, William Thomas Warren, and the Government. The court conducted a hearing on all outstanding motions on May 13, 2005.

## BACKGROUND

The defendant William Thomas Warren was charged in a twenty-six count indictment with mail fraud, wire fraud, securities fraud, criminal contempt, embezzlement of commodity pool funds, and acting as an unregistered commodity pool operator. There is also a forfeiture count, pursuant to 18 U.S.C. § 981(a)(1)(C), regarding property constituting or derived from proceeds traceable to the offenses including deposit accounts, a money judgment in the amount of $20,000,000.00, and Warren's personal residence located in Troutville, Virginia. The charged offenses stem from an investment scheme whereby Warren allegedly solicited funds from members of the public for the purpose of trading commodity futures contracts. In fact, the indictment states, Warren deposited the majority of the funds he received in his own bank accounts and engaged in a "Ponzi" scheme to repay earlier investors with funds obtained from new investors.

## DISCUSSION

I. <u>Defendant's Motion to Suppress</u>

After the defendant was located in the basement of his residence on January 28, 2004 by law enforcement officers executing a search warrant, he was instructed to sit in a chair and remain there during the officers' search of his home. The defendant was interviewed by a law enforcement officer at that time and was kept under observation during the entirety of the search. The defendant was not free to leave the premises. During the search, agents located a sketch pad in the house. After the agents inquired about the sketch pad, the defendant gave a statement indicating, among other things, that he had prepared the writings included in the pad. The defendant requests the court to exclude any statements he made while detained during the search as well as the contents and existence of the sketch pad.

If a person is taken into custody or deprived of his freedom in any significant way, he must be given <u>Miranda</u> warnings before being questioned. <u>United States v. Photogrammetric Data Services, Inc.</u>, 259 F.3d 229, 240 (4th Cir. 2001) (abrogated on other grounds) (internal citations omitted). A person will be deemed "'in custody' for <u>Miranda</u> purposes if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'" <u>United States v. Leshuk</u>, 65 F.3d 1105, 1108 (4th Cir. 1995). The defendant appears to be contending that his detention during the search of his home should be deemed "custody" for the purposes of <u>Miranda</u> and that he made the statements in question without being given the necessary <u>Miranda</u> warnings. At the hearing, however, the Government conceded that it will not use Warren's statements regarding the sketch pad to establish that he is the individual who made the writings contained in the pad.

2

Therefore, the defendant's argument in this regard appears to be moot.

Furthermore, the sketch pad was discovered in the defendant's residence during the execution of a search pursuant to a lawful search warrant. The Government noted at the hearing that it intends to present certain of the defendant's other writings as evidence during the trial so that the jury will be able to determine that the writing in the sketch pad is also that of the defendant. The court finds that this would be a satisfactory means to circumstantially establish the authorship of the writings included in the sketch pad. The Government may include mention of the sketch pad during its opening argument. However, it may not refer to the writings as those of the defendant until it has laid the proper foundation during the trial. Based on the foregoing, the defendant's motion to suppress will be denied.

II.  Defendant's Motion in Limine to Assert Common-Law Spousal Privilege

Defendant requests the court to bar any testimony from his wife, Patricia Warren, concerning any conversations between himself and his wife. The marital communications privilege can be asserted by either spouse and prevents the other spouse from testifying against the defendant regarding confidential communications between the spouses. United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). In order to fall within the privilege, the parties must have a valid marriage. Id. at 515. Furthermore, "[m]arital communications are presumptively confidential." United States v. Parker, 834 F.2d 408, 411 (4th Cir. 1987). With regard to these communications, "[t]he presence of a third party negatives the presumption of privacy." Id. (quoting Pereira v. United States, 347 U.S. 1, 6 (1954)).

The Government contends that this motion is moot because it will agree to ask no questions of Patricia Warren in regard to confidential communications between herself and the

defendant. The court agrees that the motion is moot at this time given the Government's representation. Nevertheless, the privilege would apply to any such confidential communications, and if the issue arises at trial, counsel for the defendant may object at that time.

III.     Motion to Dismiss Count 23 (Criminal Contempt) for Lack of Subject Matter Jurisdiction

Count Twenty-Three of the superseding indictment against the defendant charges Warren with criminal contempt in that he willfully disobeyed an injunction issued October 31, 1995 in the United States District Court for the Eastern District of Washington permanently restraining and enjoining him from committing fraud in the offer and sale of securities. The defendant requests the court to dismiss this count because the court lacks subject matter jurisdiction over the charge.

Courts of the United States are given the power to punish contempt by 18 U.S.C. § 401 which states as follows:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, *such contempt of its authority, and none other*, as -
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to *its* lawful writ, process, order, rule, decree, or command.

(Emphasis added). 18 U.S.C. § 401(3) applies to the charge at issue here. In interpreting the predecessor to this statute, one court noted that the section is "a limitation of the power of the inferior federal courts to punish for contempt; and the power must be exercised within the restrictions therein named." Wilson v. United States, 26 F.2d 215, 218 (8th Cir. 1928). Therefore, the general rule is that only the court which issued an order may impose civil or criminal sanctions for contempt of that order. Dunham v. United States ex rel. Kansas City

4

Southern Ry. Co., 286 F. 376, 378 (5th Cir. 1923); Klett v. Pim, 965 F.2d 587, 591 (8th Cir. 1992); Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1290 (5th Cir. 1989).

Apparently, the Government agrees that this court is without jurisdiction to hear Count Twenty-Three of the superseding indictment because it conceded the defendant's argument at the hearing. Because this court lacks subject matter jurisdiction over the criminal contempt charge, the defendant's motion will be granted, and Count Twenty-Three of the superseding indictment will be dismissed.

The Government does contend, however, that it should be permitted to introduce into evidence at the trial the order from the United States District Court for the Eastern District of Washington. The defendant argues that the order is not admissible because it was a settlement agreement which would be inadmissible under Federal Rule of Evidence 408. The defendant also contends that the order would be unduly prejudicial against him. The Government counters that the order should be admissible to show the defendant's prior knowledge of securities laws and of what was permissible under those laws.

Rule 408 provides as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Therefore, the Washington consent order could not be admitted to prove the

5

defendant actually engaged in securities fraud in the state of Washington. Nevertheless, a consent decree is admissible for other purposes, such as to show intent. See Johnson v. Hugo's Skateway, 974 F.2d 1408, 1413 (4th Cir. 1992) (consent decree entered in previous civil rights litigation admissible to show intent or motive racially to discriminate); United States v. Gilbert, 668 F.2d 94, 97 (2nd Cir. 1981) (SEC civil consent decree admissible to show defendant was aware of SEC reporting requirements). In this case, the circumstances surrounding the Washington consent order and the terms of the order itself would be admissible for purposes other than to prove the defendant's liability for securities fraud, such as to show intent as an element of the offenses with which the defendant is charged or to show the defendant's knowledge of the securities laws.

The consent order would also be admissible under Federal Rule of Evidence 404(b), which generally prohibits the use of other crimes, wrongs or acts to show action in conformity therewith. That rule also permits the introduction of such evidence for other purposes, such as to prove intent. Fed. R. Evid. 404(b). Such evidence of prior bad acts is admissible when "the evidence is (1) relevant to an issue other than the general character of the defendant, (2) 'probative of an essential claim or an element of the offense,' and (3) reliable." United States v. White, ___ F.3d ___, 2005 WL 949326 (4th Cir. 2005) (internal citations omitted). Here, the evidence regarding the Washington consent order is relevant to prove the defendant's intent and knowledge of the securities laws. The evidence appears to be reliable in that the Government has a copy of the actual consent order. Furthermore, the court finds that the high probative value of the evidence concerning the circumstances surrounding the issuance of the Washington consent order is not outweighed by any prejudice to the defendant. Fed. R. Evid. 403. Therefore, the

6

court will permit the Government to introduce evidence regarding the Washington consent order solely for these limited other purposes and will instruct the jury accordingly.

IV.     Defendant's Motion in Limine to Exclude Testimony of Steve Vance, IRS Agent

The Government has identified Steve Vance as a Special Agent of the IRS and designated him as an expert witness. The Government states that he will "discuss the appropriate tax filings for limited liability companies and other related entities." Special Agent Vance would also testify about the lack of tax filings by Mission and Mission Tech, LC between 1998 and 2004. The defendant contends that, because the superseding indictment against him does not allege any violations of the tax laws, this testimony is irrelevant to the charges against him. The defendant also argues that, even if it is relevant, an instruction stating the applicable law to the jury would be adequate.

At the hearing, the defendant indicated that he will stipulate to the fact that he failed to file any tax returns for the named entities during the relevant period. The Government then responded that it would accept this stipulation and a jury instruction regarding the applicable tax law in lieu of Agent Vance's testimony. As a result of the agreement of the parties, the court will deny the defendant's motion as moot.

V.     Defendant's Motion in Limine Regarding Investors' Testimony

The defendant requests the court to direct that any investors who are witnesses at trial may not testify regarding their alleged losses of their investment money because they lack personal knowledge as to whether their funds have, in fact, been lost. The defendant contends that investigating agents have informed certain investors that their funds have been lost and that

7

he acted fraudulently. Defendant asserts that the investors' opinions are based only upon this hearsay information. He contends that the investors should be permitted to testify only in regard to statements the defendant allegedly made, the amount of their investments and the source of the funds for their investments.

The court agrees that it would be inappropriate for investors to testify that the defendant had defrauded them or had stolen money. Investors may, however, testify that they have lost the money they invested with the defendant because such testimony may be descriptive of the state of affairs as they understand it.

VI. <u>Admissibility of Certificates of Authenticity</u>

By oral motion at a prior hearing, the Government asked the court to permit it to offer certificates of authenticity in lieu of testimony from the appropriate custodians of record to prove the authenticity of numerous business records from a variety of financial institutions. Such business records are generally admissible under the hearsay exception in Federal Rule of Evidence 803(6). That Rule requires that such records must be authenticated by the testimony of a custodian or by certification in accordance with Rule 902(11). Fed. R. Evid. 803(6).

Rule 902(11) sets forth the self-authentication requirements for business records. A domestic record of regularly conducted business activity must be accompanied by a declaration certifying that the record:

> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice.

8

Fed. R. Evid. 902(11). According to the Advisory Committee Notes on this Rule, the declaration requirement would be satisfied by a declaration that satisfies 28 U.S.C. § 1746, which states that an unsworn declaration "in writing of [declarant] which is subscribed by him, as true under penalty of perjury, and dated" is sufficient. The sample form submitted by the Government includes all of the required provisions and appears to satisfy Rule 902(11). Furthermore, the Government notified the defendant of its intention to offer evidence in accordance with this rule in its May 5, 2005 Trial Memorandum, satisfying the notice requirements of Rule 902(11) as well. The defendant has made no objection to the use of the certificates of authenticity. Therefore, the court will permit the Government to use the certificates of authenticity at trial.

VII. <u>Government's Use of Charts and Summaries at Trial</u>

By oral motion and in its Trial Memorandum, the Government has indicated its intention to move several charts and summaries into evidence during the trial. Federal Rule of Evidence 1006 permits the use of charts and summaries when "[t]he contents of voluminous writings, recordings, or photographs [] cannot be conveniently examined." The Government must also make the original records available to the defendant in advance of trial. In this case, the Government has provided copies of approximately 30,000 pages of records to the defendant during discovery.

The United States Court of Appeals for the Fourth Circuit has set forth guidelines governing the use of charts and summaries in a trial as follows:

> Summary charts are admissible if they aid the jury in ascertaining the truth. The complexity and length of the case as well as the numbers of witnesses and exhibits are considered in making that determination. While the potential prejudice to a defendant must be considered, prejudice may be dispelled by giving the defendant

9

> an opportunity to cross-examine the individual who prepared the chart. In
> addition, a cautionary jury instruction may be requested and given.

United States v. Loayza, 107 F.3d 257, 264 (4th Cir. 1997). A trial court may instruct the jury that "charts and summaries are only as good as the underlying evidence that supports them." Id. If there is a conflict or potential conflict between the charts or summaries and the materials from which they were derived, a court may instruct the jury that "it is the raw material underlying the charts and summaries that controls." United States v. Hayes, 322 F.3d 792, 799 (4th Cir. 2003).

In this case, the volume of records and the potential complexity of the financial transactions included therein appears to justify the use of appropriate charts and summaries during trial to aid the jury. Therefore, as long as the charts or summaries are properly authenticated, they should be generally admissible. The court does intend to use appropriate jury instructions to guide the jury's consideration of such charts and summaries at the conclusion of the trial.

VIII.  Government's Use of a Summary Witness During Trial

By oral motion and in its Trial Memorandum, the Government has also indicated that it intends to offer David McKinney, a United States Postal Inspector, as a summary witness. The Fourth Circuit has interpreted Federal Rule of Civil Procedure 611(a) as permitting the use of summary witnesses during trials involving complex offenses and a large number of witnesses. United States v. Johnson, 54 F.3d 1150 (4th Cir. 1995). When deciding whether to permit such a summary witness, the district court considers whether the summary testimony will assist the jury in ascertaining the truth. 54 F.3d at 1162. There are dangers inherent in such summary

10

testimony, however. Id. Some of those dangers, such as lending to the credibility of earlier government witnesses and adding to jury confusion in determining the appropriate weight of the evidence, can be exacerbated when a summary witness is also testifying as a fact or expert witness during the trial. Id.

The court agrees that a summary witness would be helpful to the jury given the complex nature of the offenses involved in this case and the large number of witnesses. This summary witness may remain in court throughout the trial. If this summary witness remains in court throughout the trial, he will not also be permitted to testify as a fact or expert witness, given the potential for confusion. Furthermore, the defendant will be permitted to cross-examine the summary witness thoroughly concerning the validity of his summary testimony. See Johnson, 54 F.3d at 1162. The court also intends to use appropriate jury instructions to inform the jury of the appropriate weight to afford such summary testimony.

The Clerk is directed to send certified copies of this Opinion and the accompanying Order to all counsel of record.

ENTER: This 17th day of May, 2005.

_____
United States District Judge