CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE. VA
FILED

SEP 0 9 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 7:04CR00021 |
| | ) | |
| WILLIAM THOMAS WARREN | ) By: | Hon. Michael F. Urbanski |
| | ) | United States Magistrate Judge |

## PRELIMINARY
## REPORT AND RECOMMENDATION

This matter is before the court as to the recommended distribution of funds available for restitution to victims in this case, and is before the undersigned by designation of the district court for report and recommendation pursuant to 18 U.S.C. § 3664(d)(6).

In accordance with a plea agreement, Warren pled guilty to counts 1, 16, 22, 24 and 26 of the superceding indictment charging him with mail fraud, securities fraud, embezzling funds from a securities pool, and an asset forfeiture charge.

Having reviewed the declarations and supporting documentation provided by the victims and voluminous files collected by the United States during the investigation of this matter, the undersigned finds that the following persons are victims and that the total amount of the loss is $6,986,071.55.

A hearing has been set on September 14, 2005 to allow the parties to comment on this preliminary report.

## I. PROCEDURAL HISTORY

In the superceding indictment entered March 28, 2005, the defendant was charged with the following:

**Count One** - From a date unknown to the Grand Jury and continuing to on or about February 2004, defendant devised a scheme to defraud and obtain money by false pretenses by enticing individuals and organizations to invest with him and his companies, suggesting high rates of return and guaranteeing no loss of original investment, in violation of 18 U.S.C. § 1341.

**Count Sixteen** - On or about January 10, 2004, defendant for the purpose of executing the scheme to defraud and obtain money by false pretenses, did knowingly send by mail a check in violation of 18 U.S.C. § 1341.

**Count Twenty-two** - From a date unknown to the Grand Jury and continuing to on or about February 2004, defendant did by the instrumentalities of interstate commerce, use and employ manipulative and deceptive devices in connection with the purchase and sale of securities, in violation of 18 U.S.C. §§ 78j(b), 78ff.

**Count Twenty-four** - From approximately 1998 through on or about February 2004, defendant knowingly embezzled and converted to his own use money and other property valued over $100 which he had received from victim investors for the purpose of investing in defendant's commodity trading pool in violation of 7 U.S.C. § 13(a)(1)

Warren pled guilty to these charges in accordance with a plea agreement executed on May 24, 2005. The plea agreement reflects an agreement between Warren and the United States to a specific sentence of twenty-one (21) years imprisonment followed by a three year period of supervised release. Warren also agreed to make restitution as ordered by the court at sentencing. As regards restitution, Warren specifically agreed to pay restitution based on the entire scope of his criminal conduct, and not just the charges to which he was pleading guilty. The plea agreement reflects Warren's understanding that he is responsible for restitution in an amount to be determined by the court at sentencing, and that the amount may be as high as $20,000,000.00. Warren agreed to pay restitution to the victims of his fraudulent investment scheme and that the

amounts owed an identities of the victims would be determined at his sentencing hearing. Warren further agreed to execute any documents necessary to release the funds he has in any repository, bank investment or other financial institution in order to make partial or total payment towards the restitution imposed. Warren further identified certain assets and agreed to forfeit his interest in those assets, including a number of accounts, approximately $10,100.00 in cash, certain computer equipment and two parcels of real estate in Botetourt County, Virginia.

By order dated on May 31, 2005, persons seeking restitution were to file declarations of their loss, including information as to the amount and date of individual payments made to Warren as well as the amount and date of any funds received by Warren. Such declarations along with requisite documentation were to be filed on or before August 1, 2005.

Pursuant to 18 U.S.C. § 3663A, in connection with sentencing proceedings for an offense in which an identifiable victim or victims has suffered a physical injury or pecuniary loss, the court shall order the defendant make restitution to the victim of the offense. In considering whether to order restitution, the court is required to consider (1) the amount of the loss sustained by each victim as a result of the offense; and (2) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and other such factors as the court deems appropriate. 18 U.S.C. § 3663(a)(1)(B). Under this section, a "victim" is a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.

As reflected in the court's order of May 31, 2005, victims will not be able to recover any amounts they believe they should have received as interest or return on their investments with Warren or any of his companies. There are four reasons for this. First, as this report makes

3

plain, the funds available for restitution are far less than the amount of principal invested and lost by the victims, without consideration of any interest or return on investment. Second, given the lengthy period of incarceration set forth in the plea agreement and Warren's age, there is no realistic likelihood that he will be able to earn any additional monies upon release which could be added to the monies available for restitution. By the same token, given the period of incarceration set forth in the plea agreement, Warren has no financial needs for the foreseeable future. Third, considering the large number of investors and the various periods of time at issue, the task of attempting to calculate rates of return would complicate and prolong the sentencing process such as to impose an undue burden. See 18 U.S.C. § 3663A(c)(3)(B). Finally, given the vagaries of the market over the period of time at issue, attempting to even ballpark a return on investment would be entirely speculative.

At the present time, the United States estimates that the amount of money available for restitution is $647,285.94. At present, there are three sources of funds: $10,100.00 in cash; approximately $598,293.84 in Warren's accounts frozen by the United States; and $38,892.10, which represents the net proceeds from the sale of Warren's real estate. Certain victims have speculated in the information provided that Warren has hidden vast quantities of assets in offshore accounts, but no evidence has been presented that such accounts exist.

There is little doubt that the victims will feel less than satisfied with any allocation of these funds. The simple fact is that the investors collectively provided Warren and the entities he controlled far more principal than was ever returned. In the aggregate, the total amount of the loss, defined as the shortfall in returned principal, to these victims is $6,986,071.55. Review of the voluminous correspondence and information provided by the victims unfortunately paints a

grim picture of the dashed expectations of these victims. While it is likely that few of the victims will be satisfied with the small amount of the restitution to be recommended, there simply is not enough money available to allow the victims to recover their principal, much less any investment return.

This report and recommendation makes recommendations as to several issues: (1) the identity of the victims of Warren's offenses; (2) the amount of the investment lost by each victim; and (3) a formula for allocating the funds available for restitution to the victims. Once a final number is determined as to the amount of the available funds, the specific restitution amounts can be calculated.

## II. IDENTITY OF VICTIMS

### A.  Individuals Not Recommended to Participate in the Distribution

Based on a review of the claims filed and the FBI files on each victim, it is recommended that the following individuals not participate in the distribution. As regards these persons, the records, including FBI interviews, questionnaires, claim forms and account statements, establish that each of them received from Warren at least their entire original investment. Under the May 31, 2005 Order, these persons are not entitled to recovery of any lost interest or return on their invested principal.[1]

---

[1]This recommendation does not include any persons who did not file claims for restitution on or before September 1, 2005. These persons include: Michael and Janna Allison, Tony Asher, Dahlores Bass, William and Mary Ann Bond, Kathleen Buker (deceased - heirs filed individual claims), Frank Christofferson, Julie Coleman, James Crosby, Richard Fox, Gary and Denise Fridley, Gary Garst, Ninna Gendreau, Carl Goodman, Charles and Alma Hall, Sam Layman, Estate of Majorie Martin, William Shane McCrorey, Chet and Shirley Morris, Larry and Gavin Musselman, Tony and Alisa Price, Shannon and Lillian Simmons, Kathleen Smith and Joseph Steinhardt.

1. Roger Bass

2. George and Barbara Brown

3. Ken and Charlotte Brumfield

4. Berneta Earl

5. Kaja K. Englund

6. Kregg Everett

7. Daniel and Allyson Fortner

8. Francis Fortner

9. Sharon Fortner

10. James and Carson Kistner

11. Edwin and Mary Kopf [2]

12. J. Kaye Maier-Hart

13. Jim and Shirley Moore

14. David and Debra Musselman

15. Robert Norris

16. Lori Osborne

17. Carolyn and Richard Peterson

18. David and Deborah Purser

---

Joseph Steinhardt.

[2]The FBI Restitution Calculations reflect a loss to the Kopfs at $267,686.00. Nothing in the Kopf's Declaration of Victim Loss or the investigating file supports this figure. Rather, those materials reflect that the Kopfs invested $7,000.00 in 1991 and were returned $26,000.00 in 1999.

19. Glenda Ryle

20. Sherri and Randy Smith[3]

21. Susan and Larry Smith

22. Thomas and Sandra Smith

23. Beverly Teague


**B.    Individuals Recommended to Participate in the Distribution**

1. Gary Wayne Adams - Adams invested $126,245.89 with Warren and received $50,000.00 in return. His loss is $76,245.89.

2. David and Elizabeth Ammen - The Ammens invested $55,600 with Warren and received $19,000 in return. Their loss is $33,600.

3. Dahlores Bass - Bass wired Warren $16,010 to open a new account in January of 2004. Warren was then arrested and no account was ever created on her behalf, nor did she receive any return. Bass is a victim to the extent of $16,010.00.

4. Edward Beauchamp - Beauchamp invested $7,000 with Warren and received no funds in return. His loss is $7,000.

5. Allen and Shaarla Blackwell - The Blackwells invested a total of $80,000 and received no money in return. Their loss is $80,000.

6. James and Jill Breiner - The Breiners invested $30,000 with Warren and received no money in return. Their loss is $30,000.

---

[3]Sherri Smith also invested with daughter Katie Smith in a separate account with Warren. As to that account, Sherri and Katie Smith sustained a loss as noted _infra_.

7

7. Greg Broemeling - Broemeling invested $20,000 with Warren and received no funds in return. His loss is $20,000.

8. Shelton and Samantha Brown - The Browns invested $37,725 with Warren and received $7,800 in return. Their loss is $29,925.

9. Joanne Brusati - Brusati invested $143,000 with Warren and received $10,000 in return. Her loss is $133,000.

10. Shelly Buker - Buker invested a total of $81,201.90 with Warren and withdrew funds in the total amount of $9,800. Her loss is $71,401.90.

11. Wade and Jerri Canning - The Cannings invested $20,000 with Warren and received $7,500 in return. Their loss is $12,500.

12. Circle of Champions, Inc. - Circle of Champions, Inc. invested $315,000 and received $24,100. Its loss is $290,900.

13. Anthony Cline - Cline invested $61,387.89 with Warren and received $10,400 in return. His loss is $50,987.89.

14. Morgan and Karen Colebrook - The Colebrooks invested $769,768 with Warren and received $330,500 in return. Their loss is $439,268.00. The Colebrooks kept meticulous records and documentation exists for all but the last $28,000 of withdrawals in 2003 and 2004.

15. Steve and Barbara Damitio - The Damitios invested $246,738.68 with Warren and received $213,871.68. Their loss is $32,867.00.

16. Gregory and Heather Daugherty - The Daughertys invested $70,000 and received no money in return. Their loss is $70,000.

8

17. Paul and Barbara Daugherty - While the Daughertys claim form lists $47,752.36, other records in the FBI investigative file detail the investment at $49,482.50. The file also reflects payments to Paul Daugherty from Mission LLC of $6,800, yielding an investment loss of $42,682.50.

18. Barbara Dunlop - Dunlop invested $156,000 with Warren and received no funds in return. Her loss is $156,000.

19. Calvin Eaves - Eaves invested $30,000 with Warren and received $15,000 in return. His loss is $15,000.

20. Patricia Ferris - Ferris invested $71,000 with Warren and received $23,400 in return. Her loss is $48,600.

21. Warren and Paula Fiihr - The Fiihrs invested $23,837.99 in two IRAs with Warren in 2001 and received $12,300.91 in August 2003, closing one account. Their loss is $11,537.08.

22. Richard Fox - Fox invested $6,000 with Warren and received $1,500 in return. His loss is $4,500. The amount of this loss is established exclusively by Fox's affidavit.

23. Micky and Donna Fridley - The Fridleys invested $85,178.38 with Warren and received $27,500 in return. Their loss totals $57,678.38. Supporting documents confirm all but $20,000 of the principal invested. The total claimed is supported by declaration, which is consistent with the amount reflected in earlier questionnaires.

24. John and Gloria Garnand - The Garnands invested $17,500 with Warren and received $12,300 in return. Their loss is $5,200.

25. Lucille Garst - Garst invested $85,683.39 with Warren and received $24,750 in return. Her loss is $60,933.39.

9

26. <u>Waymon and Randi Gay</u> - The Gays invested $314,788.81 with Warren and received $147,834.55 in return. Their loss is $166,954.26.

27. <u>James and Beth Anne Gillespie</u> - The Gillespies invested $80,000 with Warren and received no money in return. Their loss is $80,000.

28. <u>Aaron and Kellie Ginsberg</u> - The Ginsbergs invested $50,000 with Warren and received no money in return. Their loss is $50,000.

29. <u>Steve and Jami Glass</u> - The Glasses invested $29,914.13 with Warren and received no money in return. Their loss is $29,914.13. The Glasses claim $30,039.13 resulting from an IRA rollover of $25,039.13, plus a separate investment of $5,000. Review of the documentation reveals that the actual amount invested with Warren from the rollover was $24,914.13, not $25,039.13. The FBI Restitution Calculation spreadsheet incorrectly sums both these numbers and the other $5,000 investment. Excluded from this calculation are investments in and withdrawals from a separate Jami Glass IRA from the 1990s for which no claim was submitted.

30. <u>Darlene Gold</u> - Gold's affidavit filed in connection with her claim indicates that she invested $500,000 with Warren. Gold is an elderly woman and most of her personal financial information was lost when she was seriously ill a few years ago. The information from her FBI interview indicates that Gold received regular payments from Warren through First Trust Corporation and One Group Dealer Services in Boston. From the available records, it appears that Gold made withdrawals of $410,975. Thus, the amount of Gold's loss is determined to be $89,025.

31. <u>Fred and Mary Ellen Goodwin</u> - The Goodwins invested $68,792.56 and received $25,000 back. Their total loss is $43,792.56.

10

32. <u>Calvin and Sharon Grinstead</u> - The Grinsteads invested $47,622.49 with Warren and received no money in return. Their loss is $47,622.49.

33. <u>David and Linda Haag</u> - The Haags invested $451,500 with Warren and received $36,648.24 in return. Their total loss is $414,851.76. There is no supporting documents for the amount of the withdrawals other than what Haag represented on his questionnaire and in his FBI interview.

34. <u>Barbara Held</u> - Held invested $244,498.45 with Warren and received $193,399.75 in return. Her loss is $51,158.70. Held claims an additional $1,000 investment on January 1, 1995, but that amount is already included in the total reflected above. Held states in her claim that there is no record of withdrawals of $4,294.57 on September 1, 1997 and $15,015.00 on August 1, 2003, therefore these amounts must be erroneous. In comparison to other victims, Held was a meticulous record keeper. Records in the file provided to the Postal Inspector substantiate these two withdrawals. On a copy of a December 31, 1997 statement, Held penned that she "took" $4,294.57. Likewise, on a August 31, 2003 statement, Held noted that she "took out $15,015.25" and that it was received on October 20, 2003. Thus, those two withdrawals are excluded from Held's claimed loss.

35. <u>Ervin Hill</u> - Hill invested $23,002.45 with Warren and received no money in return. His loss of principal on this account is $23,002.45. Hill also had an account with his mother, Alma Patten, now deceased. Hill's claim for that account is listed under Ms. Patten's name.

36. <u>Mark and Beth Holt</u> - The Holts invested $32,000 with Warren and received no money in return. Their loss is $32,000.

11

37. Linda Hyatt - Hyatt's total investment with Warren was $25,000.00. She received no money in return. Hyatt sent her brother, Paul Daugherty $10,000.00 in April, 2003, from some life insurance proceeds she had received. Daugherty opened Mission accounts for Hyatt and her sister Betty Lawson in the amount of $5,000 each. Lawson has filed a claim for her $5,000. Later in 2003, Hyatt wired Warren an additional $20,000.00. Thus, Hyatt's loss is $25,000.00.

38. John and Judy Jarrells - The Jarrells invested $40,000 with Warren and received $22,000 in return. Their loss is $18,000.

39. Rachelle Jeppesen - Jeppesen claims that she invested $33,513.47 with Warren and received no money in return. Documents support all but $10,000 of Jeppeson's investment. Jeppeson cannot locate any documents as to a $10,000 investment in late 2001. However, Jeppeson states that she invested this amount from a settlement of an insurance claim from 1997. Jeppeson's statements are corroborated by account statements from April, 2002 reflecting an account balance $10,000.00 higher than in August, 2001. Thus, her loss is $33,513.47.

40. Terri Johnson - Johnson invested $35,023.28 with Warren and received $19,923 in return. Her loss is $15,100.28.

41. Conrad and Susan Kelly - Although the Kellys stated in their FBI interview on February 11, 2005 that they invested $15,083 with Warren, records provided with their claim indicate their investment totaled $40,933.01. In particular, copies of canceled checks were provided in the amounts of: $5,000 (ck 320), $5,000 (ck 321), $7,500 (ck 450), $5,873.01 (ck 179), $2,500 (ck 1051) all made payable to Investment Strategies Fund. In addition, the Kellys provided copies of a check payable to E.F. Hutton in the amount of $1,230 (ck 382), a check payable to Intl. Trading Group Ltd. in the amount of $1,830 (ck 432), and a check made payable

12

to GNP Commodities for $12,000 (ck 1099), all to be under the investment control of Warren. The Kellys state in their interview that they withdrew $33,048 from their investment. Therefore, their total loss is $7,885.01.

42. Charles and Mary King - The Kings invested $5,000.00 with Warren and received no money in return. Their loss is $5,000.00.

43. David and Amy Kopf - The Kopfs invested $11,166.76 and received no money in return. Their loss is $11,166.76.

44. Joel Kopf - On June 30, 2001, Kopf rolled over $4,540.00 IRA into what he thought was a Roth IRA administered by Warren. Kopf has received no money in return. His loss is $4,540.00.

45. Jonathan and Susan Kopf - The Kopfs invested $5,000.00 with Warren and received no money in return. Their loss is $5,000.00.

46. Henry Kuhlman - Kuhlman invested $400,000.00 with Warren and received no money in return. He is a victim as to $400,000.00. $200,000.00 was Kuhlman's own money, and he paid $200,000.00 in out of his late wife's trust fund. The two claims are listed separately by the FBI on its Restitution Calculation, but are combined here.

47. Dorothy Lane - Lane invested $43,934.69 and received $34,000 in return. Her loss is $9,934.69.

48. Betty Lawson - Lawson invested $5,000 with Warren and received no money in return. Her total loss is $5,000.

49. Craig and Stacie Lee - The Lees invested $259,232.81 with Warren and received no money in return. Their loss is $259,232.81.

13

50. <u>Mary Smith Lovelady</u> - Lovelady invested $45,000 with Warren and received $3,200 in return. Her loss is $41,800.

51. <u>Rick Mader</u> - According to his detailed claim, Mader invested $55,000 with Warren and received $44,750 in return. His loss is $10,250. The amount of the loss differs from what was originally calculated on the FBI Restitution Calculations spreadsheet and is instead based on the information in Mader's detailed claim submission.

52. <u>Mathew Mason</u> - Mason invested $40,876.19 with Warren and received no money in return. His loss is $40,876.19.

53. <u>Martha and Robert McGuire</u> - The McGuires invested $33,300 with Warren and received no money in return. Their loss is $33,300.

54. <u>Dan and Denise McIntyre</u> - The McIntyres invested $145,648.05 with Warren and received $14,200 in return. Their total loss is $131,448.05. A portion of this investment, $20,000.00, was wired directly to Darlene Gold (Denise McIntyre's stepmother) on June 18, 2003 in exchange for her capital shares as reflected both in the McIntyre's bank statements and an Investment Strategies Group Transaction Confirmation. Thus, that amount is properly included in the McIntyre's investment.

55. <u>Lonny McIntyre</u> - McIntyre invested $5,000 with Warren and received no money in return. She is a victim as to $5,000.

56. <u>John and Ginny Meyers</u> - Records reflect that the Meyers invested $502,229.83 with Warren and received $162,770 in return. Their total loss is $339,459.83.

57. <u>Joel and Maureen Morassutti</u> - The Morassuttis claim they invested $49,000 with Warren. Documentation exists for only $39,000 of the investment. There is no documentation

14

supporting a $10,000 investment they claim was made by money order on July 31, 1992. After review of the investigative file and the transcript of the interview with the Royal Canadian Mounted Police, there is no reason to question this investment, and it is recommended that their declaration be accepted as to this investment. However, the RCMP interview does refer to a withdrawal of $2,000.00. This latter amount is deducted from the loss, yielding a total loss of $47,000.00.

58. Phil and Nan Murphy - The Murphys invested $108,700 with Warren and received $20,650 in return. Their loss is $88,050.

59. Tracey Murphy - Murphy invested $27,067.31 with Warren and received $19,978.19 in return. Her loss is $7,089.12.

60. Nancy and Doug Nemec - The Nemecs invested $15,000 with Warren and received $5,000 in return. Their loss is $10,000.

61. Howard Noel - Noel invested $70,000 with Warren and received no money in return. His loss is $70,000.

62. Richard and Bernadine Oatney - Records reflect the Oatneys invested $99,000 with Warren and received earnings of $17,900 back. The Oatneys are victims to the extent of $81,100.

63. One for Life Ministries (Joe Ulveling) - Records reflect that One for Life Ministries invested $10,000 with Warren and received a total of $7,331.73 back. The loss for this victimized organization is $2,668.27.

64. Ray and Jeanne Oostdyk - Records reflect that the Oostdyks invested $279,970.61 with Warren. In addition to the amounts reflected on the FBI's Restitution Calculations spreadsheet, the Oostdyks also invested a $6,470.61 rollover and $5,000 check from GWA Inc.

15

to First Trust not included by FBI on its spreadsheet. They received $10,000 in earnings back and recovered $17,926.50 from an account after Warren's arrest, totaling $27,926.50 in monies received from Warren. They are victims, therefore, with a loss of $252,044.11.

65. Johnathan C. Overstreet - Records reflect that Overstreet invested $20,000 with Warren and received no money in return. His loss was $20,000. Although the investment ultimately was placed with Mission Tech, a Warren entity, the records and interview notes indicate that the initial collateral for the investment was a one-half interest in a 2002 late model Monte Carlo circle track race car. Overstreet never saw the race car or his money.

66. Gail Rhodehouse Owens - Records reflect Gail Owens invested $27,748.33 with Warren and received no money in return. Although $10,000 of this investment was a gift from Darlene Gold's investment account into Owens' accounts, it was a sum invested in Owens' name and thus appropriately part of her loss. Her total loss is $27,748.33.

67. Martin S. Owens - Martin Owens indicated in his FBI interview and questionnaire that he invested $10,000 with Warren in 1993 and that his mother, Darlene Gold, gifted him an additional $15,000 which was invested with Warren. Owens received $18,890 in return. He is a victim to the extent of $6,110. As with Gail Rhodehouse Owens, the gifts from Darlene Gold are properly considered as being a loss to Martin Owens. Martin Owens' initial investment of $10,000 is evidenced by a negotiated cashier's check. Martin Owens has consistently maintained that his mother made two gifts to him, one around January, 2000 of $5,000 and one in early 2002 of $10,000. The second gift, of $10,000, is reflected in a contemporaneous Investment Strategies Limited account statement. Owens has lost the statement reflecting the earlier $5,000 gift, but

16

his ensuing account balance appears consistent with such a gift. Therefore, there is no evidence to contradict his sworn affidavit reflecting total deposits with Warren of $25,000.

68. Wade Owens - Wade Owens invested $14,500 with Warren, $3,500 of his own money and $11,000 transferred from his mother Darlene Gold. As Wade Owens made no withdrawals, his total loss is $14,500.

69. Deborah Parks - Records indicate that Parks invested $530,980.66 with Warren. Parks stated she received $68,711.66 back. Her loss is $462,269.

70. Alma Patten and Ervin Hill - Records indicate that Patten invested $80,000 in a joint account with her son, Ervin Hill, with Warren and received $26,600 in return. The loss on this account is $53,400. Ervin Hill also had a separate investment account and has a claim for it. The amount of the loss reflected herein differs from the number on the FBI Restitution Calculations by $1,400, which was a payment made by Warren on February 1, 2004. This payment was never received as the $1,400 check bounced. Thus, Patten and Hill never received this additional $1,400.

71. Buren Powers - Powers invested $142,481.57 with Warren. Therefore, Powers is a victim to the extent of $142,481.57. In his claim, Powers only lists $104,070.62 because he says he received a check in the amount of $38,410.95 from Warren on June 22, 2000. However, the files reflect that this amount was placed into an IRA with Investment Strategies Ventures on that same date. Consistently, the FBI's Restitution Calculation reflects no return of premium.

72. Emma Sherron Pritchett - Pritchett invested $94,068.98 with Warren and received no money in return. Her loss is $94,068.98.

17

73. <u>Richard Pritchett</u> - Pritchett invested $276,334.18 with Warren and received no funds in return. His loss is $276,334.18. Pritchett's claim states he received $4,000.00 back from Circle of Champions pursuant to his "loan" to them. However, this money did not come to him as a result of his investment directly with Warren. Rather, it was money invested by Pritchett in Circle of Champions, Inc., which, in turn, held institutional accounts with Warren. Neither Pritchett nor the other investors in Circle of Champions, Inc. have any individual claim for restitution directly from Warren by virtue of their investment in Circle of Campions. Rather, those claims are subsumed in the claim of Circle of Champions, Inc. Any monies due the members, shareholders or investors in that entity are controlled by the corporate governing documents and investor agreements with that entity.

74. <u>Robert and Leigh Prom</u> - The Proms invested $227,179.15 with Warren largely from IRA rollovers and were returned $109,350. They are victims as to $117,829.15. In addition to the IRA rollovers in 2000, the Proms deposited $9,696.88 for their children in 2002 and $12,450.00 in 2002 obtained credit card advances.

75. <u>Shannon Pumpelly</u> - Pumpelly invested $27,067.31 with Warren and received $14,500 in return. She is a victim as to her $12,567.31 loss.

76. <u>John and Donna Ramsey</u> - The Ramseys invested $26,900 with Warren and received no funds in return. They are victims as to $26,900.

77. <u>Walter and Lynne Rape</u> - The Rapes state they invested $513,396.45 with Warren. Information provided to the FBI by the Rapes reflects that they received monthly payments during a portion of 1998 and during the years 1999-2003, totaling $482,016.57. This calculation differs from that determined by the FBI as regards payments received during 2001. Examination

18

of the available checks reflect monthly payment to the Rapes of $6,000 for Account 1 in 2001. While the FBI appears to have interpreted a note provided by the Rapes to reflect monthly payments of $7,916.57, the undersigned believes that the proper interpretation is monthly payments of $6,000, plus one payment of $1,916.57. Therefore, their net loss of principal is $31,379.88.

78. <u>Michael Richardson</u> - Records reflect Richardson invested $161,000 with Warren and received $600 in return. His net loss is $160,400.

79. <u>Brenda Roberts</u> - Roberts indicates she invested $18,412.30 with Warren and withdrew a total of $9,200 in 2002 and 2003. Her loss, therefore, is $9,212.30.

80. <u>Maria Salazar</u> - Salazar invested $5,000 with Warren and received no funds in return. Her loss is $5,000.

81. <u>Michael and Sharon Shaw</u> - The Shaws invested $64,191.76 with Warren and received $19,000 in return. Their loss is $45,191.76. $24,191.76 of Shaw's investment was a rollover from a retirement fund from the Washington State Patrol. Shaw has consistently claimed an additional investment of $25,000 from a deferred compensation plan. Although there is no documentation reflecting the second investment, Shaw's claim is consistent with the Investment Strategies Funds account statements in the FBI investigative file. Shaw may have been Warren's last investor, having wired in $15,000.00 to Warren per his oral request on February 5, 2004. By Order dated March 15, 2005, the district court denied the motion of the United States to return this $15,000 to Shaw. Thus, the amount of the investments, $64,191.76, is as claimed by Shaw. The net amount of Shaw's loss is reduced by $3,000, reflecting a

19

withdrawal not noted in his claim but reflected in an Investment Strategies Funds account statement of April 30, 2001.

82. Chad Simmons - Simmons invested $10,000 with Warren and received no funds in return. His loss is $10,000. Although no bank records were provided, this investment was corroborated by statements from Warren reflecting a $10k balance plus interest.

83. Jeffrey Scott - Scott states that he invested $89,209 with Warren and received $56,900 in return. Therefore, his loss is $32,309. Scott did not receive many records from Warren, but he did receive two investments receipts which appear erroneous. This calculation uses Scott's representations as to the amounts of his investment from his FBI interview in 2004.

84. Anna Shaw - Anna Shaw claims she invested $31,964.20 with Warren. She received $5,000 back. She is a victim as to the remaining $26,964.20. The FBI Restitution Calculation pegs her investment at $43,877.15, an unexplained nearly $12,000 more than what Shaw claims. Review of the Shaw records did not provide any rationale for the additional amount noted on the FBI calculation.

85. Garland and Carolyn Simmons - According to Simmons, he invested $150,000 with Warren over the years. Records indicate he withdrew $81,000 reflected on the 8/31/02 account statement, and $50,000 reflected on the 5/31/02 statement, totaling $131,000 in withdrawn earnings. The FBI spreadsheet reflects payments to Simmons as $191,000 ostensibly based on statements sent by Warren. Simmons indicates in his affidavit that two withdrawals noted on his account, one for $35,000 and one for $25,000 were incorrect and that he questioned Warren about them, albeit too late. This recommendation takes the Simmonses at their word and reflects a $19,000 net loss on their investment.

20

86. <u>Sherri and Katie Smith</u> - Sherri Smith and her daughter Katie Smith invested $45,000 in their joint account with Warren and received $36,093.35 in return. Their net loss of principal is $8,906.65. This amount differs from the FBI Restitution Calculation by $3,000 in the amount of monies received from Warren. That calculation apparently did not credit a $3,000 withdrawal dated December 31, 2002 which was attached to the claim form. Sherri Smith had another joint account with Randy Smith in which they invested $10,000, but received more funds than invested through that account.

87. <u>Lee Ann Snell</u> - Snell invested $11,333.73 with Warren and received no money in return. Her loss is $11,333.73. This loss differs from the FBI Restitution Calculations by $400 – there was an additional $400 investment made as evidenced by the statements. Snell did not include this in her first questionnaire, the numbers the FBI used, but did include it as an investment in her claim filed with the court. Documents support this total amount of investment.

88. <u>John Stickley</u> - The Stickley account is fraught with inconsistencies and ambiguity. Stickley invested $22,000 with Warren and received $4,700 in returns. His loss is $17,300. Stickley apparent invested $2,000 with Mission, LLC which money was repaid in March, 2003. Stickley received another $2,700 in checks from Mission, LLC, which he asserts was for work done around the Warren home and were not investment returns. In the attachment to his claim, Stickley claims to have made another $4,000 investment the summer of 2001, but reference to this investment appears nowhere else. Stickley claims a second account with Fox Co., and an investment in the amount of $20,000, none of which was repaid. Absent further amplification, there is no way to validate Stickley's claim of house work or the new reference to the $4,000

21

investment. As such, these amounts are not credited. As such Stickley's net loss is $17,300, reflecting investment of $22,000 and payments of $4,700.

89. Trinity Christian Academy - Trinity Christian Academy invested $48,000 with Warren and received $6,000 in return. Their loss is $42,000.

90. Joe and Debbie Ulveling - The Ulvelings personally invested $80,000 with Warren and received $7,331.73 back. The extent of their loss is $72,668.27.

91. Jillane and John Vanderbleek - The Vanderbleeks invested $30,000 and received no money in return. Their loss is $30,000.

92. John Vanderbleek - Vanderbleek invested $30,000 with Warren and received no money in return. He is a victim as to $30,000.

93. Richard Via - Via invested $18,681.88 with Warren and received no money in return. His loss is $18,681.88.

94. Mark Weber - Weber invested $95,000 and received $1,800 in return. He is a victim as to $93,200. The FBI calculation notes that Weber received $3,600 in two $1,800 installments; however, in his FBI interview, Weber states that the last $1,800 check from Warren bounced. As a result, the second check is not included.

95. Thomas and Linell Whalen - The Whalens invested $190,765.65 with Warren and received $3,000 in return. The loss they sustained is $187,765.65.

96. Gary and Helen Wilson - The Wilsons invested $196,500 with Warren and received $135,166.90 in return. They have sustained a loss of $61,333.10.

97. Dennis Zainfeld - Zainfeld invested $40,000 with Warren and received $15,000 back. His loss is $25,000. There is, however, no FBI documentation of this claim.

98. <u>Paul Zainfeld</u> - Zainfeld invested $16,800 with Warren and received $6200 back. She is a victim as to $10,600.

## III. <u>AMOUNT OF LOSS</u>

As reflected in the attached schedule, the total amount of the loss for the identified victims is $6,986,071.55.

## IV. <u>ALLOCATION OF RESTITUTION</u>

The recommended proposed allocation of the assets available for restitution is relatively straightforward. Given the length of the scheme orchestrated by Warren, the undersigned does not believe that any of the investors who suffered a shortfall in the amount of the principal invested should be excluded from obtaining some portion of available funds for restitution. After reviewing all of the claims filed and the eight boxes of investigative files, there does not appear to be any rationale or justification to exclude any group of investors, whether by geography, time, or other reason, from participating in the distribution of the restitution. Considering the scope of this scheme, there is no reasonable basis upon which to allocate the available monies based on, for example, length of investment. While one could argue that the earlier investors should obtain a greater share since they lost the use of their money for a longer period of time, no one is getting any interest or return on the monies invested by way of restitution. At the other end of the spectrum, there are the investors who gave Warren money just before word broke of his arrest. Their plight is equally extreme. At the end of the day, therefore, it is recommended that all investors who suffered a net loss of principal as identified herein share in the available restitution

23

on a pro rata basis. For example, those who lost $100,000, will receive 100 times the restitution of those victims who lost only $1,000. The total amount lost exceeds the funds available for restitution by a ratio of more than 10 to 1. Based on the preliminary numbers reflected herein, it is expected that each victim will receive in the neighborhood of $.09265 of their losses as detailed in this report.

## V. **CONCLUSION**

A final Report and Recommendation will be issued following the hearing held in this matter on September 14, 2005.

Entered this 9th day of September, 2005.

_____
Michael F. Urbanski
United States Magistrate Judge

24