CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 7:04CR00021** |
| | ) | |
| WILLIAM THOMAS WARREN | ) **By:** | **Hon. Michael F. Urbanski** |
| | ) | **United States Magistrate Judge** |

## AMENDED
## REPORT AND RECOMMENDATION

This matter is before the court as to the recommended distribution of funds available for restitution to victims in this case, and the undersigned has been designated by the district court to provide a Report and Recommendation on that subject pursuant to 18 U.S.C. § 3664(d)(6).

In accordance with a plea agreement, Warren pled guilty to counts 1, 16, 22, 24 and 26 of the superceding indictment charging him with mail fraud, securities fraud, and embezzling funds from a commodities pool. Both the superceding indictment and plea agreement included an asset forfeiture provision.

Having reviewed the declarations of loss and supporting documentation provided by the victims and voluminous files collected by the United States during the investigation of this matter, the undersigned finds that the following persons are victims and that the total amount of the loss is $7,111,848.91.

A preliminary report and recommendation was filed on September 9, 2005 in this matter, and a hearing was held on September 14, 2005 to provide the parties an opportunity to comment on the preliminary report. By and large, neither the United States nor Warren lodged objections to the bulk of the preliminary report, but each raised issues concerning a few of the victims.

Addressing those comments, a report and recommendation was filed on September 23, 2005 making revised recommendations as to the distribution of funds available for restitution to victims in this case. On October 11, 2005 an evidentiary hearing was held to determine the restitution claimed by Dennis Zainfeld. At that hearing, neither the government nor defendant objected to the court's consideration of claims filed by victims since this court issued its report and recommendation. This Amended Report and Recommendation incorporates both claims recently received by the court as well as restitution claimed by Dennis Zainfeld.

## I. PROCEDURAL HISTORY

In the superceding indictment entered March 28, 2005, the defendant was charged with the following:

> **Count One** - From a date unknown to the Grand Jury and continuing to on or about February 2004, defendant devised a scheme to defraud and obtain money by false pretenses by enticing individuals and organizations to invest with him and his companies, suggesting high rates of return and guaranteeing no loss of original investment, in violation of 18 U.S.C. § 1341.

> **Count Sixteen** - On or about January 10, 2004, defendant for the purpose of executing the scheme to defraud and obtain money by false pretenses, did knowingly send by mail a check in violation of 18 U.S.C. § 1341.

> **Count Twenty-two** - From a date unknown to the Grand Jury and continuing to on or about February 2004, defendant did by the instrumentalities of interstate commerce, use and employ manipulative and deceptive devices in connection with the purchase and sale of securities, in violation of 18 U.S.C. §§ 78j(b), 78ff.

> **Count Twenty-four** - From approximately 1998 through on or about February 2004, defendant knowingly embezzled and converted to his own use money and other property valued over $100 which he had received from victim investors for the purpose

2

of investing in defendant's commodity trading pool in violation of
7 U.S.C. § 13(a)(1).

Count Twenty-Six concerned asset forfeiture. Warren pled guilty to these charges in accordance

with a plea agreement executed on May 24, 2005. The plea agreement reflects an agreement

between Warren and the United States to a specific sentence of twenty-one (21) years

imprisonment followed by a three (3) year period of supervised release. Warren also agreed to

make restitution as ordered by the court at sentencing. As regards restitution, Warren specifically

agreed to pay restitution based on the entire scope of his criminal conduct, and not just the

charges to which he was pleading guilty. The plea agreement reflects Warren's understanding

that he is responsible for restitution in an amount to be determined by the court at sentencing, and

that the amount may be as high as $20,000,000.00. Warren agreed to pay restitution to the

victims of his fraudulent investment scheme, and that the amounts owed and identities of the

victims would be determined at his sentencing hearing. Warren further agreed to execute any

documents necessary to release the funds he has in any repository, bank investment or other

financial institution in order to make partial or total payment towards the restitution imposed.

Warren further identified certain assets and agreed to forfeit his interest in those assets, including

a number of bank accounts, approximately $10,100.00 in cash, certain computer equipment, and

two parcels of real estate in Botetourt County, Virginia.

By Order dated May 31, 2005, persons seeking restitution were to file declarations of

their loss, including information as to the amount and date of individual payments made to

Warren, as well as the amount and date of any funds received from Warren. Such declarations

along with requisite documentation were to be filed on or before August 1, 2005.

3

A number of claims were filed after the August 1, 2005 deadline.[1] While Warren noted this fact and introduced an exhibit listing such claims at the hearing on September 14, 2005, he waived any issue as to timeliness, stating, by counsel, that these persons should be included for purposes of restitution. The United States also stated that it believed all victims with documented claims should be included for restitution purposes. The undersigned agrees.

Pursuant to 18 U.S.C. § 3663A, in connection with sentencing proceedings for an offense in which an identifiable victim or victims has suffered a physical injury or pecuniary loss, the court shall order the defendant make restitution to the victim of the offense. In considering whether to order restitution, the court is required to consider (1) the amount of the loss sustained by each victim as a result of the offense; and (2) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and other such factors as the court deems appropriate. 18 U.S.C. § 3663(a)(1)(B). Under this section, a "victim" is a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.

As reflected in the Order of May 31, 2005, victims will not be able to recover any amounts they believe they should have received as interest or return on their investments with Warren or any of his companies. There are four reasons for this. First, as this Amended Report makes plain, the funds available for restitution are far less than the amount of principal invested and lost by the victims, without consideration of any interest or return on investment. Second,

---

[1]Twenty-one total claims were received after August 1, 2005. Fifteen of those claim declarations, however, were executed in July; two were executed on August 1, and one on August 3. Three additional claims, from Chet and Shirley Morris, Larry Musselman, and Kathleen Smith, were received after the court issued its report and recommendation on September 23, 2005. All of these claims are considered in this Amended Report.

4

given the lengthy period of incarceration set forth in the plea agreement and Warren's age, there is no realistic likelihood that he will be able to earn any additional monies upon release which could be added to the monies available for restitution. By the same token, given the period of incarceration set forth in the plea agreement, Warren has no financial needs for the foreseeable future. Third, considering the large number of investors and the various periods of time at issue, the task of attempting to calculate rates of return would complicate and prolong the sentencing process such as to impose an undue burden. See 18 U.S.C. § 3663A(c)(3)(B). Finally, given the vagaries of the market over the period of time at issue, attempting to even ballpark a return on investment would be entirely speculative.

At the present time, the United States estimates that the amount of money available for restitution is $647,285.94.[2] At present, there are three sources of funds: $10,100.00 in cash; approximately $598,293.84 in Warren's accounts frozen by the United States; and $38,892.10, which represents the net proceeds from the sale of Warren's real estate. Certain victims have speculated in the information provided that Warren has hidden vast quantities of assets in offshore accounts, but no evidence has been presented that such accounts exist.

There is little doubt that the victims will feel less than satisfied with any allocation of these funds. The simple fact is that the investors collectively provided Warren and the entities he controlled far more principal than was ever returned. In the aggregate, the total amount of the loss, defined as the shortfall in returned principal, to these victims is $7,111,848.91. A review of the voluminous correspondence and information provided by the victims unfortunately paints a

---

[2]The final amount available for restitution cannot be precisely quantified until a Forfeiture Order is entered, which is expected to be done in conjunction with sentencing. A spreadsheet containing an estimate of projected restitution amounts is attached as Exhibit A.

5

grim picture of the dashed expectations of these victims. While it is likely that few of the victims will be satisfied with the small amount of the restitution to be recommended, there simply is not enough money available to allow the victims to recover their principal, much less any investment return.

This Amended Report makes recommendations as to several issues: (1) the identity of the victims of Warren's offenses; (2) the amount of the investment lost by each victim; and (3) a formula for allocating the funds available for restitution to the victims. Once a final number is determined as to the amount of the available funds, the specific restitution amounts can be calculated.

## II. IDENTITY OF VICTIMS

### A.    Persons Not Filing Claims.

This Amended Report recommends that no restitution be paid to persons who did not file claims for restitution. These persons include: Michael and Janna Allison[3], Tony Asher, Dahlores Bass, Roger Bass, William and Mary Ann Bond, George and Barbara Brown, Ken and Charlotte Brumfield, Kathleen Buker (deceased - heirs filed individual claims), Frank Christofferson, Julie Coleman, James Crosby, Berneta Earl, Kregg Everett, Daniel and Allyson Fortner, Francis Fortner, Sharon Fortner, Gary and Denise Fridley, Gary Garst, Ninna Gendreau, Jami Glass[4], Carl Goodman, Charles and Alma Hall, James and Carson Kistner, Sam Layman,

---

[3]To date, the Allisons have not filed a claim for restitution. At the hearing held on September 14, 2005, Warren stated he believed their losses to be around $100,000. The FBI/Postal Inspector Restitution Calculation estimates their losses at $109,900.

[4]Jami Glass invested with her husband Steve Glass in a joint account with Warren. As to that account, Jami and Steve Glass sustained a loss as noted in § II.C. ¶ 28. At the September 14,
                                                                              (continued...)

Estate of Majorie Martin, William Shane McCrorey, David and Debra Musselman, Robert Norris, Lori Osborne, Carolyn and Richard Peterson, Tony and Alisa Price[5], David and Deborah Purser, Glenda Ryle, Shannon and Lillian Simmons, Susan and Larry Smith, Thomas and Sandra Smith, Joseph Steinhardt, and Beverly Teague.

**B.    Claimants Not Recommended to Receive Restitution.**

Based on a review of the claims declarations and the FBI/Postal Inspector files for each victim, it is recommended that the following claimants not participate in the distribution of monies available for restitution. As regards these persons, the records, including agent interviews, questionnaires, claim forms and account statements, establish that each of them received from Warren at least his or her entire original investment. Under the May 31, 2005 Order, these persons are not entitled to recovery of any lost interest or return on their invested principal.

1. Kaja K. Englund - Englund indicated in her FBI interview that she originally invested $4,000 she received in inheritance with Warren. Statements received from Warren reveal Englund made withdrawals of $1,000 (4/30/03 statement), $1,000 (8/31/99 statement), and

---

[4](...continued)
2005 hearing, Warren stated that Jami Glass also had an individual IRA account with him, valued at approximately $20,000. However, to date no claim has been filed for any amount of investment lost in an individual account held by Jami Glass. Documentation does exist to support investments into and withdrawals from Jami Glass' separate IRA account. In their FBI interview, the Glasses state that Jami Glass originally invested $9,000 in a separate IRA account in the 1990s but rolled that into a joint account with Steve Glass. No claim was submitted for any losses that may have been sustained from any account owned by Jami Glass other than the joint account with Steve Glass.

[5] The court received a letter from Tony Price dated September 20, 2005 asking whether a claim might still be accepted. To date, however, the Prices have not filed a claim. As a result, this Amended Report contains no recommendation for any restitution to the Prices.

Case 7:04-cr-00021-GEC-mfu   Document 132   Filed 10/13/05   Page 7 of 40   Pageid#: 532

$2,000 (6/1/97 statement). Because the amount Englund received back from Warren equals the amount she invested, she is not owed any restitution.

2. <u>Linda Smole Gonzalez</u> - Gonzalez filed a claim in this matter but indicated she is owed $0 restitution. Records reveal she invested $34,150 and received $57,510 from Warren. Thus, she received more money back than she originally invested. While these numbers vary from the FBI/Postal Inspector numbers as to both amount invested and amount withdrawn, all of the numbers consistently conclude that Gonzalez is not entitled to any restitution.

3. <u>Edwin and Mary Kopf</u> - The FBI/Postal Inspector Restitution Calculations reflect a loss to the Kopfs at $267,686. Nothing in the Kopf's Declaration of Victim Loss or the investigative file supports this figure. Rather, those materials reflect that the Kopfs invested $7,000 in 1991 and were returned $26,000 in 1999.

4. <u>J. Kaye Maier-Hart</u> - Maier-Hart invested $102,701.17 with Warren and received at least $353,130.82 back. Thus, she received more money back than originally invested and is not recommended to participate in the distribution. This investment number matches that of the FBI/Postal Inspector. Maier-Hart believes she invested $110,807.17. Maier-Hart's claim number includes 4 different "additions" (8/31/98 for $3,000; 12/31/97 for $800; 11/15/95 for $1,806; and 3rd Q '93 for $2,500) that are not deposits of capital, but are instead amounts she normally would have had included in her monthly earnings checks but instead decided not to withdraw. Those are considered to be profits or reinvestment of earnings, and not deposits. As to the amount withdrawn, the number reflected above results from adding up all references to "withdrawals" from the numerous statements in the file. On her questionnaire, Maier-Hart approximates her total amount received to be $353,634 (36 mos. @ $600 per mo.; 48 mos. @

8

$1,200 per mo.; 48 mos. @ $1,933 per mo.; 50 mos. @ $3,633 per mo.). Regardless of which specific number is correct, Maier-Hart had no loss of investment principal.

5. Jim and Shirley Moore - The earliest statements in the file indicate that the Moores invested a maximum of $28,617.03 with Warren and received payments totaling $41,300 in return. They received more back than originally invested and are therefore not recommended to participate in the distribution.

6. Garland and Carolyn Simmons - According to Simmons, he invested $150,000 with Warren over the years. Records in the investigative file confirm that he withdrew $81,000 reflected on the 8/31/02 account statement, and $50,000 reflected on the 5/31/02 statement, totaling $131,000 in withdrawn funds. The FBI/Postal Inspector spreadsheet reflects payments to Simmons as $191,000. Simmons indicates in his declaration that two withdrawals noted on his account, one for $35,000 and one for $25,000 were incorrect and that he questioned Warren about them, albeit too late.

At the hearing on September 14, 2005, the United States introduced a spreadsheet, created by the Postal Inspector and verified by the FBI, from Warren's bank records reflecting actual payments of $191,000 to Simmons. Both the United States and Warren agreed at the hearing that the Simmonses received more than their entire investment back from Warren. Thus, it is not recommended that the Simmonses receive any restitution.

7. Sherri and Randy Smith - The Smiths invested $10,000 with Warren and received $11,906.65 in return. They received more than their original investment, and are therefore not recommended to participate in the distribution.

9

Sherri Smith also invested with daughter Katie Smith in a separate account with Warren. As to that account, Sherri and Katie Smith sustained a loss as noted in § II.C. ¶ 84.

8. <u>John Stickley</u> - As noted in the preliminary report, the Stickley account is fraught with inconsistencies and ambiguity. The preliminary report indicated that Stickley invested $22,000 and received $4,700 in return, resulting in a loss of $17,300. While these numbers are consistent with the FBI/Postal Inspector Restitution Calculations spreadsheet, they appear to be inaccurate.

In an attachment to his claim form, Stickley states that he lost most of his documents when a pipe burst causing water damage to his home and documents during a hospitalization. Stickley's claimed investment consists of $20,000 invested in a joint account with Patricia and Matthew Warren on July 26, 2002, $2,000 invested with Warren in 2000, and a $4,000 cash investment during the summer of 2001. Stickley calculates a loss from this $26,000 investment by subtracting from that amount $15,108.50, representing his interest in a joint bank account with Patricia and Matthew Warren. On that basis, Stickley calculates his loss at $10,891.50.

At the hearing on September 14, 2005, the United States stated that its investigation revealed that the $20,000 investment was not in an account controlled by Tom Warren, but rather was done separately with Fox Co., an entity associated with Patricia and Matthew Warren. Warren concurred. By the same token, the file contains many written statements by Stickley that the $20,000 was not invested with Tom Warren, but was set up in a separate joint account with Patricia and Matthew Warren. Therefore, this amount will be excluded from Stickley's claim, along with the $15,108.50 remaining from that investment in the joint Bank of Fincastle account.

As to Stickley's June, 2000 investment of $2,000, there is no loss here as Stickley received $2,000 from Warren in 2003. While Stickley suggests that this return not be counted as

10

it was provided by Warren "out of compassion towards my circumstances at the time," there is nothing to suggest that this money was a gift or "mercy payment" as Stickley contends. As such, this investment is a wash.

Finally, Stickley claims a cash investment of $4,000 made during the summer of 2001. Nothing corroborates this claimed investment. Indeed, there is no reference by Stickley in his earlier questionnaire, e-mails and correspondence to this claimed $4,000 cash investment. Moreover, Stickley indicates that he received a total of $4,700 in payments from Warren. Stickley claims that these payments were made by Warren for work Stickley did around Warren's home and "for work I had done for his radio show for financial help under the name of Thomas DeSaint." The investigative file contains nothing to suggest just what work Stickley claims to have done at the Warren home or for the radio show. The fact that the checks written to Stickley were drawn on a Mission, LLC account also raises questions about Stickley's assertion that the monies were paid by Warren for Stickley's personal services.

On balance, the undersigned recommends that no restitution be paid Stickley. Although Stickley appears to have lost nearly $5,000 on an investment made with Patricia and Matthew Warren, as those monies were, by all accounts, not under Tom Warren's control, that loss is not subject to restitution in this proceeding. Stickley's documented $2,000 investment was repaid. Even crediting his new, undocumented claim that he invested $4,000 in cash in the summer of 2003, Stickley received $4,700 from Warren, resulting in no loss of principal.

Case 7:04-cr-00021-GEC-mfu   Document 132   Filed 10/13/05   Page 11 of 40   Pageid#: 536

## C.     Claimants Recommended to Receive Restitution.

A spreadsheet containing the names of those recommended to receive restitution and an estimate of projected restitution amounts is attached as Exhibit A.

1. Gary Wayne Adams - Adams invested $126,245.89 with Warren and received $50,000.00 in return. His loss is $76,245.89.

2. David and Elizabeth Ammen - The Ammens invested $55,600 with Warren and received $19,000 in return. Their loss is $33,600.

3. Edward Beauchamp - Beauchamp invested $7,000 with Warren and received no funds in return. His loss is $7,000.

4. Allen and Shaarla Blackwell - The Blackwells invested a total of $80,000 and received no money in return. Their loss is $80,000.

5. James and Jill Breiner - The Breiners invested $30,000 with Warren and received no money in return. Their loss is $30,000.

6. Greg Broemeling - Broemeling invested $20,000 with Warren and received no funds in return. His loss is $20,000.

7. Shelton and Samantha Brown - The Browns invested $37,725 with Warren and received $7,800 in return. Their loss is $29,925.

8. Joanne Brusati - Brusati invested $143,000 with Warren and received $10,000 in return. Her loss is $133,000.

9. Shelly Buker - Buker invested a total of $81,201.90 with Warren and withdrew funds in the amount of $9,800. Her loss is $71,401.90.

12

10. <u>Wade and Jerri Canning</u> - The Cannings invested $20,000 with Warren and received $7,500 in return. Their loss is $12,500.

11. <u>Circle of Champions, Inc</u>. - Circle of Champions, Inc. invested $315,000 and received $24,100. Its loss is $290,900.

12. <u>Anthony Cline</u> - Cline invested $61,387.89 with Warren and received $10,400 in return. His loss is $50,987.89.

13. <u>Morgan and Karen Colebrook</u> - The Colebrooks invested $769,768 with Warren and received $330,500 in return. Their loss is $439,268. The Colebrooks kept meticulous records and documentation exists for all but the last $28,000 of withdrawals in 2003 and 2004.

14. <u>Steve and Barbara Damitio</u> - The Damitios invested $246,738.68 with Warren and received $213,871.68. Their loss is $32,867.00.

15. <u>Gregory and Heather Daugherty</u> - The Daughertys invested $70,000 and received no money in return. Their loss is $70,000.

16. <u>Paul and Barbara Daugherty</u> - While the Daughertys claim form lists $47,752.36, other records in the FBI investigative file detail the investment at $49,482.50. The file also reflects payments to Paul Daugherty from Mission LLC of $6,800, yielding an investment loss of $42,682.50.

17. <u>Barbara Dunlop</u> - Dunlop invested $156,000 with Warren and received no funds in return. Her loss is $156,000.

18. <u>Calvin Eaves</u> - Eaves invested $30,000 with Warren and received $15,000 in return. His loss is $15,000.

13

19. <u>Patricia Ferris</u> - Ferris invested $71,000 with Warren and received $23,400 in return. The preliminary report and recommendation contained a mathematical error in the amount of $1,000. Ferris' calculated loss is $47,600.

At the hearing held September 14, 2005, Warren asserted that the correct amount of Ferris' investment was $70,000 instead of $71,000. As Warren's assertion was unsworn and lacked any documentation, it is not credited. Ferris' loss therefore stands at $47,600.

20. <u>Warren and Paula Fiihr</u> - The Fiihrs invested $23,837.99 in two IRAs with Warren in 2001 and received $12,300.91 in August 2003, closing one account. Their loss is $11,537.08.

21. <u>Richard Fox</u> - Fox invested $6,000 with Warren and received $1,500 in return. His loss is $4,500. The amount of this loss is established exclusively by Fox's affidavit.

22. <u>Micky and Donna Fridley</u> - The Fridleys invested $85,178.38 with Warren and received $27,500 in return. Their loss totals $57,678.38. Supporting documents confirm all but $20,000 of the principal invested. The total claimed is supported by declaration, which is consistent with the amount reflected in earlier questionnaires.

At the September 14, 2005 hearing, Warren voiced his belief that the Fridleys understated their investment by $100,000. However, the Fridleys have consistently declared that their total investments in all three of their accounts with Warren amounted to $85,178.38. Documentation supports this figure. As Warren's assertion of an additional $100,000 was unsworn, lacked any documentation, and is inconsistent with the Fridleys' statements, it is not credited. The Fridleys' calculated loss therefore remains $57,678.38.

23. <u>John and Gloria Garnand</u> - The Garnands invested $17,500 with Warren and received $12,300 in return. Their loss is $5,200.

14

24. <u>Lucille Garst</u> - Garst invested $85,683.39 with Warren and received $24,750 in return. Her loss is $60,933.39.

25. <u>Waymon and Randi Gay</u> - The Gays invested $314,788.81 with Warren and received $147,834.55 in return. Their loss is $166,954.26.

26. <u>James and Beth Anne Gillespie</u> - The Gillespies invested $80,000 with Warren and received no money in return. Their loss is $80,000.

27. <u>Aaron and Kellie Ginsberg</u> - The Ginsbergs invested $50,000 with Warren and received no money in return. Their loss is $50,000.

28. <u>Steve and Jami Glass</u> - The Glasses invested $29,914.13 with Warren and received no money in return. Their loss is $29,914.13. The Glasses claim $30,039.13 resulting from an IRA rollover of $25,039.13, plus a separate investment of $5,000. Review of the documentation reveals that the actual amount invested with Warren from the rollover was $24,914.13, not $25,039.13. The FBI/Postal Inspector Restitution Calculation spreadsheet incorrectly sums both these numbers and the other $5,000 investment. Excluded from this calculation are investments in and withdrawals from a separate Jami Glass IRA from the 1990s for which no claim was submitted, as noted in footnote 4.

29. <u>Darlene Gold</u> - Gold's affidavit filed in connection with her claim indicates that she invested $500,000 with Warren. Gold is an elderly woman and most of her personal financial information was lost when she was seriously ill a few years ago. The information from her FBI interview indicates that Gold received regular payments from Warren through First Trust Corporation and One Group Dealer Services in Boston. The preliminary report and

15

recommendation found Gold's withdrawals to total $410,975, from information available in the records.

A closer look at the records, however, reveals that two of the withdrawals included in that original number were actually transfers to other accounts held by Gold. A statement reflecting a withdrawal made on 8/31/92 notes that $3,000 of the total amount withdrawn was actually a transfer to another account. Additionally, a 12/31/92 statement includes a $6,000 transfer. Both of these transfers were incorrectly counted in the preliminary report and recommendation as withdrawals. Adjustments have been made to exclude the $3,000 and $6,000 transfers from the amount withdrawn from Gold's account.

Additionally, records for Dan and Denise McIntyre show a capital exchange with Gold in the amount of $20,000. This $20,000 was not included in the preliminary calculation of Gold's amount withdrawn. The amount withdrawn by Gold has been adjusted to reflect the $20,000 she received from the McIntyres in this capital exchange.

Similarly, Gail Owens' records indicate she received a gift from Gold in the amount of $10,000. This $10,000 was taken into account in the preliminary report and recommendation's computation of Gold's withdrawals. No further adjustment is necessary with regards the gift to Gail Owens.

However, records for Marty Owens indicate a $15,000 gift was made by Gold to his account with Warren and was included in his total amount invested. The preliminary report and recommendation included only $10,000 of this gift in Gold's withdrawals. An additional $5,000 has been added to the amount withdrawn by Gold to compensate for the entire gift given to Marty Owens by Gold.

16

Finally, Wade Owens' records show an $11,000 gift from Gold. In the preliminary report and recommendation, only $7,000 of this gift was counted as money received back by Gold. The total amount withdrawn by Gold has been adjusted to include the additional $4,000 she used to make the total gift of $11,000 to Wade Owens.

At the hearing held on September 14, 2005, Warren asserted Gold's investments were understated by $200,000. As Warren's assertion was unsworn and lacked any documentation, it is not credited. On October 12, 2005 the court received a letter from Gold indicating that she agrees with Warren's representations of her investments. In the letter, Gold asks the court to change her investment figures to reflect a $700,000 investment, as well as account for the interest to which she is entitled. Pursuant to the May 31, 2005 Order, this court will not consider interest in calculating restitution. Additionally, as the only evidence of a $700,000 investment is Warren's unsworn testimony, this court credits Gold's original assertion on her sworn affidavit that her investment with Warren was $500,000.

A complete review of the records reveals Gold withdrew funds in the amount of $430,975. Her total loss is $69,025.

30. <u>Fred and Mary Ellen Goodwin</u> - The Goodwins invested $68,792.56 and received $25,000 back. Their total loss is $43,792.56.

31. <u>Calvin and Sharon Grinstead</u> - The Grinsteads invested $47,622.49 with Warren and received no money in return. Their loss is $47,622.49.

32. <u>David and Linda Haag</u> - The Haags invested $451,500 with Warren and received $36,648.24 in return. Their total loss is $414,851.76. There is no supporting documents for the

17

amount of the withdrawals other than what Haag represented on his questionnaire and in his FBI interview.

33. <u>Barbara Held</u> - Held invested $244,498.45 with Warren and received $193,399.75 in return. Her loss is $51,158.70. Held claims an additional $1,000 investment on January 1, 1995, but that amount is already included in the total reflected above. Held states in her claim that there is no record of withdrawals of $4,294.57 on September 1, 1997 and $15,015.00 on August 1, 2003, therefore these amounts must be erroneous. In comparison to other victims, Held was a meticulous record keeper. Records in the file provided to the FBI and Postal Inspector substantiate these two withdrawals. On a copy of a December 31, 1997 statement, Held penned that she "took" $4,294.57. Likewise, on a August 31, 2003 statement, Held noted that she "took out $15,015.25" and that it was received on October 20, 2003. As these withdrawals are documented by Held's own notes, her claimed loss is reduced by those amounts. Again, her loss is $51,158.70.

34. <u>Ervin Hill</u> - Hill invested $23,002.45 with Warren and received no money in return. His loss of principal on this account is $23,002.45. Hill also had an account with his mother, Alma Patten, now deceased. Hill's claim for that account is listed <u>infra</u> under Ms. Patten's name.

35. <u>Mark and Beth Holt</u> - The Holts invested $32,000 with Warren and received no money in return. Their loss is $32,000.

36. <u>Linda Hyatt</u> - Hyatt's total investment with Warren was $25,000. She received no money in return. Hyatt sent her brother, Paul Daugherty $10,000 in April, 2003, from some life insurance proceeds she had received. Daugherty opened Mission accounts for Hyatt and her

18

sister Betty Lawson in the amount of $5,000 each. Lawson has filed a claim for her $5,000. Later in 2003, Hyatt wired Warren an additional $20,000. Thus, Hyatt's loss is $25,000.

37. <u>John and Judy Jarrells</u> - The Jarrells invested $40,000 with Warren and received $22,000 in return. Their loss is $18,000.

38. <u>Rachelle Jeppesen</u> - Jeppesen claims that she invested $33,513.47 with Warren and received no money in return. Documents support all but $10,000 of Jeppeson's investment. Jeppeson cannot locate any documents as to a $10,000 investment in late 2001. However, Jeppeson states that she invested this amount from a settlement of an insurance claim from 1997. Jeppeson's statements are corroborated by account statements from April, 2002 reflecting an account balance $10,000.00 higher than in August, 2001. Thus, her loss is $33,513.47.

39. <u>Terri Johnson</u> - Johnson invested $35,023.28 with Warren and received $19,923 in return. Her loss is $15,100.28.

40. <u>Conrad and Susan Kelly</u> - Although the Kellys stated in their FBI interview on February 11, 2005 that they invested $15,083 with Warren, records provided with their claim indicate their investment totaled $40,933.01. In particular, copies of canceled checks were provided in the amounts of: $5,000 (ck 320), $5,000 (ck 321), $7,500 (ck 450), $5,873.01 (ck 179), $2,500 (ck 1051) all made payable to Investment Strategies Fund. In addition, the Kellys provided copies of a check payable to E.F. Hutton in the amount of $1,230 (ck 382), a check payable to Intl. Trading Group Ltd. in the amount of $1,830 (ck 432), and a check made payable to GNP Commodities for $12,000 (ck 1099), all to be under the investment control of Warren. The Kellys state in their interview that they withdrew $33,048 from their investment. Therefore, their total loss is $7,885.01.

19

41. Charles and Mary King - The Kings invested $5,000.00 with Warren and received no money in return. Their loss is $5,000.00.

42. David and Amy Kopf - The Kopfs invested $11,166.76 and received no money in return. Their loss is $11,166.76.

43. Joel Kopf - On June 30, 2001, Kopf rolled over $4,540.00 IRA into what he thought was a Roth IRA administered by Warren. Kopf has received no money in return. His loss is $4,540.00.

44. Jonathan and Susan Kopf - The Kopfs invested $5,000.00 with Warren and received no money in return. Their loss is $5,000.00.

45. Henry Kuhlman - Kuhlman invested $400,000.00 with Warren and received no money in return. He is a victim as to $400,000.00. $200,000.00 was Kuhlman's own money, and he paid $200,000.00 in out of his late wife's trust fund. The two claims are listed separately by the FBI/Postal Inspector on its Restitution Calculation, but are combined here.

46. Dorothy Lane - Lane invested $43,934.69 and received $34,000 in return. Her loss is $9,934.69.

47. Betty Lawson - Lawson invested $5,000 with Warren and received no money in return. Her total loss is $5,000.

48. Craig and Stacie Lee - The Lees invested $259,232.81 with Warren and received no money in return. Their loss is $259,232.81.

49. Mary Smith Lovelady - Lovelady invested $45,000 with Warren and received $3,200 in return. Her loss is $41,800.

50. Rick Mader - According to his detailed claim, Mader invested $55,000 with Warren and received $44,750 in return. His loss is $10,250. The amount of the loss differs from what was originally calculated on the FBI/Postal Inspector Restitution Calculations spreadsheet and is instead based on the information in Mader's detailed claim submission.

51. Mathew Mason - Mason invested $40,876.19 with Warren and received no money in return. His loss is $40,876.19.

52. Martha and Robert McGuire - The McGuires invested $33,300 with Warren and received no money in return. Their loss is $33,300.

53. Dan and Denise McIntyre - The McIntyres invested $145,648.05 with Warren and received $14,200 in return. Their total loss is $131,448.05. A portion of this investment, $20,000.00, was wired directly to Darlene Gold (Denise McIntyre's stepmother) on June 18, 2003 in exchange for her capital shares as reflected both in the McIntyre's bank statements and an Investment Strategies Group Transaction Confirmation. Thus, that amount is properly included in the McIntyre's investment.

54. Lonny McIntyre - McIntyre invested $5,000 with Warren and received no money in return. She is a victim as to $5,000.

55. John and Ginny Meyers - Records reflect that the Meyers invested $502,229.83 with Warren and received $162,770 in return. Their total loss is $339,459.83.

56. Joel and Maureen Morassutti - The Morassuttis claim they invested $49,000 with Warren. Documentation exists for only $39,000 of the investment. There is no documentation supporting a $10,000 investment they claim was made by money order on July 31, 1992. After review of the investigative file and the transcript of the interview with the Royal Canadian

21

Mounted Police, there is no reason to question this investment, and it is recommended that their declaration be accepted as to this investment. However, the RCMP interview does refer to a withdrawal of $2,000.00. This latter amount is deducted from the loss, yielding a total loss of $47,000.00.

57. Chet and Shirley Morris - The Morrises invested $340,500 with Warren. Not all of these investments appear to be fully supported by documentation, but the court credits the statements made by the Morrises on their affidavit. According to a spreadsheet compiled by the White Collar Crime Center that reflects payments to and from Warren's accounts, the Morrises received $229,500 back from Warren. Thus, their loss is $111,000.

The court received a letter from the Morrises on October 13, 2005 stating they believe they are owed restitution in the amount of $310,000. However, the Morrises did not provide additional documentation to support this claim. Thus, the court relies on the records provided as well as the sworn affidavit submitted by the Morrises and finds their investment to be $340,500, with data from the White Collar Crime Center showing payments to the Morrises totaling $229,500. It is recommended, therefore, that their loss remain at $111,000.

58. Phil and Nan Murphy - The Murphys invested $108,700 with Warren and received $20,650 in return. Their loss is $88,050.

59. Tracey Murphy - Murphy invested $27,067.31 with Warren and received $19,978.19 in return. Her loss is $7,089.12.

60. Larry and Gavin Musselman - Larry Musselman claims to have invested a total of $55,000 with Warren. Accounts were set up for Larry Musselman ($20,000), his son Gavin Musselman ($15,000) and his cousin David Musselman ($20,000). No documentation of these

investments has been provided. However, balances on account statements support these investments. In his FBI interview, Larry Musselman stated that he allowed his account and Gavin's account to roll over, but he did not have knowledge of what David Musselman did with his investments.

Because Larry Musselman invested a total of $35,000 for himself and his son Gavin and never received funds in return, he is a victim as to $35,000.

The $20,000 invested for David Musselman was a gift from Larry Musselman and thus is not included in the amount invested for the purposes of determining Larry Musselman's loss. This amount may be included as an investment in David Musselman's account in order to determine David Musselman's loss. However, David Musselman did not file a claim for restitution. Additionally records indicate that he received back more money than was originally invested in his account. For these reasons, David Musselman is not recommended to participate in the distribution of funds at this time.

61. Nancy and Doug Nemec - The Nemecs invested $15,000 with Warren and received $5,000 in return. Their loss is $10,000.

62. Howard Noel - Noel invested $70,000 with Warren and received no money in return. His loss is $70,000.

63. Richard and Bernadine Oatney - Records reflect the Oatneys invested $99,000 with Warren and received earnings of $17,900 back. The Oatneys are victims to the extent of $81,100.

64. One for Life Ministries (Joe Ulveling) - Records reflect that One for Life Ministries invested $10,000 with Warren and received a total of $7,331.73 back. The loss for this victimized organization is $2,668.27.

23

65. <u>Ray and Jeanne Oostdyk</u> - Records reflect that the Oostdyks invested $279,970.61 with Warren. In addition to the amounts reflected on the FBI/Postal Inspector's Restitution Calculations spreadsheet, the Oostdyks also invested a $6,470.61 rollover and $5,000 check from GWA Inc. to First Trust not included by FBI/Postal Inspector on its spreadsheet. They received $10,000 in earnings back and recovered $17,926.50 from an account after Warren's arrest, totaling $27,926.50 in monies received from Warren. They are victims, therefore, with a loss of $252,044.11.

66. <u>Johnathan C. Overstreet</u> - Records reflect that Overstreet invested $20,000 with Warren and received no money in return. His loss was $20,000. Although the investment ultimately was placed with Mission Tech, a Warren entity, the records and interview notes indicate that the initial collateral for the investment was a one-half interest in a 2002 late model Monte Carlo circle track race car. Overstreet never saw the race car or his money.

67. <u>Gail Rhodehouse Owens</u> - Records reflect Gail Owens invested $27,748.33 with Warren and received no money in return. Although $10,000 of this investment was a gift from Darlene Gold's investment account into Owens' accounts, it was a sum invested in Owens' name and thus appropriately part of her loss. Her total loss is $27,748.33.

68. <u>Martin S. Owens</u> - Martin Owens indicated in his FBI interview and questionnaire that he invested $10,000 with Warren in 1993 and that his mother, Darlene Gold, gifted him an additional $15,000 which was invested with Warren. Owens received $18,890 in return. He is a victim to the extent of $6,110. As with Gail Rhodehouse Owens, the gifts from Darlene Gold are properly considered as being a loss to Martin Owens. Martin Owens' initial investment of $10,000 is evidenced by a negotiated cashier's check. Martin Owens has consistently maintained

24

that his mother made two gifts to him, one around January, 2000 of $5,000 and one in early 2002 of $10,000. The second gift, of $10,000, is reflected in a contemporaneous Investment Strategies Limited account statement. Owens has lost the statement reflecting the earlier $5,000 gift, but his ensuing account balance appears consistent with such a gift. Therefore, there is no evidence to contradict his sworn affidavit reflecting total deposits with Warren of $25,000.

69. <u>Wade Owens</u> - Wade Owens invested $14,500 with Warren, $3,500 of his own money and $11,000 transferred from his mother Darlene Gold. As Wade Owens made no withdrawals, his total loss is $14,500.

70. <u>Deborah Parks</u> - Records indicate that Parks invested $530,980.66 with Warren. Parks stated she received $68,711.66 back. Her loss is $462,269.

71. <u>Alma Patten and Ervin Hill</u> - Records indicate that Patten invested $80,000 in a joint account with her son, Ervin Hill, with Warren and received $26,600 in return. The loss on this account is $53,400. The amount of the loss reflected herein differs from the number on the FBI/Postal Inspector Restitution Calculations by $1,400, which was a payment made by Warren on February 1, 2004. This payment was never received as the $1,400 check bounced. Thus, Patten and Hill never received this additional $1,400. Ervin Hill also had a separate investment account and has a claim for it. <u>See</u> § II.C. ¶ 34.

72. <u>Buren Powers</u> - Powers invested $142,481.57 with Warren. Therefore, Powers is a victim to the extent of $142,481.57. In his claim, Powers only lists $104,070.62 because he says he received a check in the amount of $38,410.95 from Warren on June 22, 2000. However, the files reflect that this amount was placed into an IRA with Investment Strategies Ventures on that

25

same date. Consistently, the FBI/Postal Inspector's Restitution Calculation reflects no return of premium.

73. <u>Emma Sherron Pritchett</u> - Pritchett invested $94,068.98 with Warren and received no money in return. Her loss is $94,068.98.

74. <u>Richard Pritchett</u> - Pritchett invested $276,334.18 with Warren and received no funds in return. His loss is $276,334.18. Pritchett's claim states he received $4,000.00 back from Circle of Champions pursuant to his "loan" to them. However, this money did not come to him as a result of his investment directly with Warren. Rather, it was money invested by Pritchett in Circle of Champions, Inc., which, in turn, held institutional accounts with Warren. Neither Pritchett nor the other investors in Circle of Champions, Inc. have any individual claim for restitution directly from Warren by virtue of their investment in Circle of Campions. Rather, those claims are subsumed in the claim of Circle of Champions, Inc. Any monies due the members, shareholders or investors in that entity are controlled by the corporate governing documents and investor agreements with that entity.

75. <u>Robert and Leigh Prom</u> - The Proms invested $227,179.15 with Warren largely from IRA rollovers and were returned $109,350. They are victims as to $117,829.15. In addition to the IRA rollovers in 2000, the Proms deposited $9,696.88 for their children in 2002 and $12,450.00 in 2002 obtained from credit card advances.

The court received a letter from Robert Prom dated September 21, 2005 inquiring as to the whereabouts of the remainder of the $7,000,000 invested by victims, since only a small percentage of those funds has been recovered and is now available for restitution. As noted <u>supra</u>,

Case 7:04-cr-00021-GEC-mfu   Document 132   Filed 10/13/05   Page 26 of 40   Pageid#: 551

the court has received no evidence as to the existence of any assets other than those indicated in this Amended Report.

76. <u>Shannon Pumpelly</u> - Pumpelly invested $27,067.31 with Warren and received $14,500 in return. She is a victim as to her $12,567.31 loss.

77. <u>John and Donna Ramsey</u> - The Ramseys invested $26,900 with Warren and received no funds in return. They are victims as to $26,900.

78. <u>Walter and Lynne Rape</u> - The Rapes state they invested $513,396.45 with Warren. Information provided to the FBI by the Rapes reflects that they received monthly payments during a portion of 1998 and during the years 1999-2003, totaling $482,016.57. This calculation differs from that determined by the FBI as regards payments received during 2001. Examination of the available checks reflect monthly payment to the Rapes of $6,000 for Account 1 in 2001. While the FBI appears to have interpreted a note provided by the Rapes to reflect monthly payments of $7,916.57, the undersigned believes that the proper interpretation is monthly payments of $6,000, plus one payment of $1,916.57. Therefore, their net loss of principal is $31,379.88.

79. <u>Michael Richardson</u> - Records reflect Richardson invested $161,000 with Warren and received $600 in return. His net loss is $160,400.

80. <u>Brenda Roberts</u> - Roberts indicates she invested $18,412.30 with Warren and withdrew a total of $9,200 in 2002 and 2003. Her loss, therefore, is $9,212.30.

81. <u>Maria Salazar</u> - Salazar invested $5,000 with Warren and received no funds in return. Her loss is $5,000.

27

82. Jeffrey Scott - Scott states that he invested $89,209 with Warren and received $56,900 in return. Therefore, his loss is $32,309. Scott did not receive many records from Warren, but he did receive two investments receipts which appear erroneous. This calculation uses Scott's representations as to the amounts of his investment from his FBI interview in 2004.

83. Anna Shaw - Anna Shaw claims she invested $31,964.20 with Warren. She received $5,000 back. She is a victim as to the remaining $26,964.20. The FBI/Postal Inspector Restitution Calculation pegs her investment at $43,877.15, an unexplained nearly $12,000 more than what Shaw claims. Review of the Shaw records did not provide any rationale for the additional amount noted on the FBI/Postal Inspector calculation.

84. Michael and Sharon Shaw - The Shaws invested $64,191.76 with Warren and received $19,000 in return. Their loss is $45,191.76. $24,191.76 of Shaw's investment was a rollover from a retirement fund from the Washington State Patrol. Shaw has consistently claimed an additional investment of $25,000 from a deferred compensation plan. Although there is no documentation reflecting the second investment, Shaw's claim is consistent with the Investment Strategies Funds account statements in the FBI investigative file. Shaw may have been Warren's last investor, having wired in $15,000.00 to Warren per his oral request on February 5, 2004. By Order dated March 15, 2005, the district court denied the motion of the United States to return this $15,000 to Shaw. Thus, the amount of the investments, $64,191.76, is as claimed by Shaw. The net amount of Shaw's loss is reduced by $3,000, reflecting a withdrawal not noted in his claim but reflected in an Investment Strategies Funds account statement of April 30, 2001.

28

85. <u>Chad Simmons</u> - Simmons invested $10,000 with Warren and received no funds in return. His loss is $10,000. Although no bank records were provided, this investment was corroborated by statements from Warren reflecting a $10,000 balance plus interest.

86. <u>Kathleen Smith</u> - Records indicate that Kathleen Smith had two accounts with Warren. From the FBI interview, it appears her first account was set up in 1986 with an investment of $15,000. She stated in her interview that she invested other small sums of money in the account over the years. Documents show a balance of $383,755.61, including interest, in this account as of August 31, 2003. Data from the White Collar Crime Center shows payments totaling $134,900 made to James or Kathleen Smith prior to the date she set up her second account with Warren on July 12, 2002. There is no way to know how much capital was invested in this account, as no documentation of the investment has been provided. Additionally, the $383,755.61 balance cannot accurately reflect capital investment, as nearly twenty years of interest has accrued on this account. Taking into account the money returned to Smith as documented by the White Collar Crime Center and the lack of documentation of investment, the undersigned determines that no restitution is owed on this account.

However, records indicate that on July 12, 2002, Kathleen Smith established another account and invested $100,677 with Warren in life insurance proceeds after her husband's passing. The White Collar Crime Center spreadsheet shows one payment of $10,000 to Smith after that date. Thus, she is a victim as to $90,677.

87. <u>Sherri and Katie Smith</u> - Sherri Smith and her daughter Katie Smith invested $45,000 in their joint account with Warren and received $36,093.35 in return. Their net loss of principal is $8,906.65. This amount differs from the FBI/Postal Inspector Restitution Calculation by

29

$3,000 in the amount of monies received from Warren. That calculation apparently did not credit a $3,000 withdrawal dated December 31, 2002 which was attached to the claim form. Sherri Smith had another joint account with Randy Smith in which they invested $10,000, but received more funds than invested through that account.

88. <u>Lee Ann Snell</u> - Snell invested $11,333.73 with Warren and received no money in return. Her loss is $11,333.73. This loss differs from the FBI/Postal Inspector Restitution Calculations by $400; there was an additional $400 investment made as evidenced by the statements. Snell did not include this in her first questionnaire, the numbers the FBI/Postal Inspector used, but did include it as an investment in her claim filed with the court. Documents support this total amount of investment.

89. <u>Trinity Christian Academy</u> - Trinity Christian Academy invested $48,000 with Warren and received $6,000 in return. Their loss is $42,000.

90. <u>Joe and Debbie Ulveling</u> - The Ulvelings personally invested $80,000 with Warren and received $7,331.73 back. The extent of their loss is $72,668.27.

91. <u>Jillane and John Vanderbleek</u> - The Vanderbleeks invested $30,000 and received no money in return. Their loss is $30,000.

The preliminary report and recommendation separately accounted for John Vanderbleek investing $30,000 and experiencing a loss as to that entire amount. The United States pointed out, and it now appears, that the Vanderbleeks' loss was double counted. The total amount of combined investment for Jillane and John Vanderbleek was $30,000, and their total loss is $30,000.

30

92. Richard Via - Via invested $18,681.88 with Warren and received no money in return. His loss is $18,681.88.

93. Mark Weber - Weber invested $95,000 and received $1,800 in return. He is a victim as to $93,200. The FBI/Postal Inspector calculation notes that Weber received $3,600 in two $1,800 installments; however, in his FBI interview, Weber states that the last $1,800 check from Warren bounced. As a result, the second check is not included.

94. Thomas and Linell Whalen - The Whalens invested $190,765.65 with Warren and received $3,000 in return. The loss they sustained is $187,765.65.

95. Gary and Helen Wilson - The Wilsons invested $196,500 with Warren and received $135,166.90 in return. They have sustained a loss of $61,333.10.

96. Dennis and Paula Zainfeld - Dennis and Paula Zainfeld each held separate investment accounts with Warren. Records indicate Paula Zainfeld invested $16,800 with Warren and received $6,200 back. Dennis Zainfeld claims to have invested $40,000 with Warren and received $15,090 back. Records introduced at the October 11, 2005 evidentiary hearing corroborated Dennis Zainfeld's investment, including a $25,000 cashier's check and certain withdrawals set forth on the White Collar Crime Center spreadsheet.

At the September 14, 2005 hearing, both the United States and Warren raised questions as to whether Dennis Zainfeld's financial transactions with Warren were investments, or whether they concerned unrelated dealings involving a race car, recreational vehicle, and Corvette. An evidentiary hearing was held on October 11, 2005 to determine the nature of restitution owed to Dennis Zainfeld.

31

At the hearing, Zainfeld testified as to his business dealings with Warren, both individually and through his automobile restoration business, Performance Automotive, which involved a number of cars, race cars, and a motorhome owned by Warren. The White Collar Crime Center spreadsheet detailed many financial transactions between Warren and Zainfeld, but Zainfeld testified that the vast majority of them concerned car acquisitions or repairs. Zainfeld also testified that a number of Warren's vehicles of minimal value, including an old Corvette, motorhome, and BMW, are still being stored on Zainfeld's property. Zainfeld testified that these vehicles had a total combined value of $4,000 at most, and that he had open repair invoices owed to him by Warren for repairs and storage. Because of the deteriorated condition and minimal value of these vehicles, the government indicated it has no interested in forfeiting the vehicles for restitution purposes, as it would cost far more to sell these vehicles than they are worth. Previously, the government had allowed Patricia Warren to take possession of these vehicles, and she in turn gave them to Dennis Zainfeld. Therefore, these low value, deteriorating vehicles are not considered for restitution purposes.

Dennis Zainfeld also testified that Warren had a race car that he had worked on for eleven years with Warren. Zainfeld stated that he recently sold the race car and received $7,500 from that sale. Zainfeld maintained that he should be able to keep the $7,500 proceeds from the race car as it was "collateral" for his wife's investment account, and he provided documentation from Warren stating just that. (Zainfeld Hearing Exhibit 7.) Zainfeld stated that he sold this "collateral" once he learned from the court that his wife would not be receiving her full $16,800 principal back.

While Warren contends that the money Zainfeld received from the sale of the race car should not be considered part of any investment return as it was wholly unrelated to Zainfeld's

investments with Warren, the United States disagreed, asserting that as the race car was a Warren asset, other claimants should benefit as well.

Warren also asserts that Zainfeld's claim not be reduced by the $7,500, arguing that Zainfeld has a state law mechanic's lien on the race car as a result of the work Zainfeld performed for which he was not paid. There is, however, no documentation whatsoever as to the amount due Zainfeld for work on the race car. Zainfeld ballparked his labor in the vehicle at $8,500, but this testimony was entirely speculative. Indeed, Zainfeld testified that the race car was transferred back and forth between Warren and him several times, apparently without regard to any claimed lien. There is no indication as to when these transfers took place, or the effect of these transfers on any claimed mechanic's lien. It appears from the totality of Zainfeld's testimony that this race car was an evolving joint project between Warren and Zainfeld which Warren funded, and which Zainfeld hoped to profit from once the car was sold or his anticipated racing series became a success. There was no evidence that Zainfeld kept an account of his time spent working on the race car, much less entered charges on a Warren account or sent him invoices. Warren's assertion that Zainfeld is entitled to the $7,500 proceeds of the race car sale as a mechanic's lien, without offset, is rejected as being inconsistent with Zainfeld's testimony of the nature of the race car project with Warren.

On balance, the undersigned credits Zainfeld's testimony that he considered the $7,500 proceeds from the sale of the car as "collateral" for Paula Zainfeld's investment. As such, it is credited to her account as principal returned, and the amount of her claimed loss is reduced accordingly to $3,100. Dennis Zainfeld invested $40,000 with Warren and only received $15,090 back on his investment. He is a victim as to $24,910. In sum, the Zainfelds combined loss is $28,010.

33

### III. **AMOUNT OF LOSS**

As reflected in the attached schedule, the total amount of the loss for the identified victims is $7,111,848.91.

### IV. **ALLOCATION OF RESTITUTION**

The recommended proposed allocation of the assets available for restitution is relatively straightforward. Given the length of the scheme orchestrated by Warren, the undersigned does not believe that any of the investors who suffered a shortfall in the amount of the principal invested should be excluded from obtaining some portion of available funds for restitution. After reviewing all of the claims filed and the eight boxes of investigative files, there does not appear to be any rationale or justification to exclude any group of investors, whether by geography, time, or other reason, from participating in the distribution of the restitution. Considering the scope of this scheme, there is no reasonable basis upon which to allocate the available monies based on, for example, length of investment. While one could argue that the earlier investors should obtain a greater share since they lost the use of their money for a longer period of time, no one is getting any interest or return on the monies invested by way of restitution. At the other end of the spectrum, there are the investors who gave Warren money just before word broke of his arrest. Their plight is equally extreme. At the end of the day, therefore, it is recommended that all investors who suffered a net loss of principal as identified herein share in the available restitution on a pro rata basis. For example, those who lost $100,000 will receive 100 times the restitution of those victims who lost only $1,000. The total amount lost exceeds the funds available for restitution by a ratio of more than 10 to 1. Based on the preliminary numbers reflected herein, it is

expected that each victim will receive in the neighborhood of $.09102 of their losses as detailed in this Amended Report. An estimate of projected restitution amounts is reflected on Exhibit A.

## V. **PROCEDURE FOR OBJECTIONS**

By Order dated May 31, 2005, the court set a deadline for filing claims of August 1, 2005. Most of the claims referenced in this Amended Report were filed by that date, and all but three were dated on or before August 1, 2005. At the September 14, 2005 and October 11, 2005 hearings, the United States indicated that it had no objection to any victim filing a claim up until the date of sentencing, October 24, 2005. For his part, Warren's counsel represented that Warren would like any victims with valid claims to recoup as much of their loss as possible. This Amended Report considers all claims filed to date, and any further claims or claim information may be considered only upon further Order of the Court.

The Clerk of the Court is directed immediately to transmit the record in this case to the assigned United States District Judge. Objections must be filed prior to sentencing on October 24, 2005. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within this period may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Amended Report and Recommendation to all counsel of record, as well as to all persons noted herein who have been identified as investors with Warren.

Enter this _13_ day of October, 2005.

Michael F. Urbanski
United States Magistrate Judge

| Last Name | First Name | Amount of Loss | Restitution Ratio | Projected Restitution |
|-----------|-----------|---------------|-------------------|----------------------|
| Adams | Gary Wayne | $76,245.89 | $0.0910151422 | $6,939.53 |
| Ammen | Dave & Elizabeth | $33,600.00 | $0.0910151422 | $3,058.11 |
| Beauchamp * deceased as of 6/30/04. | Edward | $7,000.00 | $0.0910151422 | $637.11 |
| Blackwell | Allen and Shaarla | $80,000.00 | $0.0910151422 | $7,281.21 |
| Breiner | James and Jill | $30,000.00 | $0.0910151422 | $2,730.45 |
| Broemeling | Greg L. and Alice | $20,000.00 | $0.0910151422 | $1,820.30 |
| Brown | Shelton & Samantha | $29,925.00 | $0.0910151422 | $2,723.63 |
| Brusati | Joanne | $133,000.00 | $0.0910151422 | $12,105.01 |
| Buker | Shelly | $71,401.90 | $0.0910151422 | $6,498.65 |
| Canning | Wade and Jerri | $12,500.00 | $0.0910151422 | $1,137.69 |
| Circle of Champions | (Phillip Murphy) | $290,900.00 | $0.0910151422 | $26,476.30 |
| Cline | Anthony | $50,987.89 | $0.0910151422 | $4,640.67 |
| Colebrook | Morgan and Karen | $439,268.00 | $0.0910151422 | $39,980.04 |
| Damitio | Steve and Barbara | $32,867.00 | $0.0910151422 | $2,991.39 |
| Daugherty | Gregory and Heather Marie | $70,000.00 | $0.0910151422 | $6,371.06 |
| Daugherty | Paul and Barbara | $42,682.50 | $0.0910151422 | $3,884.75 |
| Dunlop | Barbara | $156,000.00 | $0.0910151422 | $14,198.36 |
| Eaves Sr | Calvin | $15,000.00 | $0.0910151422 | $1,365.23 |
| Ferris | Patricia | $47,600.00 | $0.0910151422 | $4,332.32 |
| Fiihr | Warren and Paula | $11,537.08 | $0.0910151422 | $1,050.05 |
| Fox | Richard | $4,500.00 | $0.0910151422 | $409.57 |
| Fridley | Micky & Donna | $57,678.38 | $0.0910151422 | $5,249.61 |
| Garnand | John and Gloria | $5,200.00 | $0.0910151422 | $473.28 |

**EXHIBIT A**

| Last Name | First Name | Amount of Loss | Restitution Ratio | Projected Restitution |
|---|---|---|---|---|
| Garst | Lucille | $60,933.39 | $0.0910151422 | $5,545.86 |
| Gay | Waymon and Randi | $166,954.26 | $0.0910151422 | $15,195.37 |
| Gillespie | James & Beth Anne | $80,000.00 | $0.0910151422 | $7,281.21 |
| Ginsberg | Aaron and Kellie | $50,000.00 | $0.0910151422 | $4,550.76 |
| Glass | Steve and Jami Buys | $29,914.13 | $0.0910151422 | $2,722.64 |
| Gold | Darlene | $69,025.00 | $0.0910151422 | $6,282.32 |
| Goodwin | Fred Jerry and Mary Ellen | $43,792.56 | $0.0910151422 | $3,985.79 |
| Grinstead | Calvin and Sharon | $47,622.49 | $0.0910151422 | $4,334.37 |
| Haag | David and Linda | $414,851.76 | $0.0910151422 | $37,757.79 |
| Held | Barbara | $51,158.70 | $0.0910151422 | $4,656.22 |
| Hill | Ervin | $23,002.45 | $0.0910151422 | $2,093.57 |
| Holt | Mark and Beth | $32,000.00 | $0.0910151422 | $2,912.48 |
| Hyatt | Linda Lou | $25,000.00 | $0.0910151422 | $2,275.38 |
| Jarrells | John and Judy | $18,000.00 | $0.0910151422 | $1,638.27 |
| Jeppesen | Rachelle | $33,513.47 | $0.0910151422 | $3,050.23 |
| Johnson | Terri | $15,100.28 | $0.0910151422 | $1,374.35 |
| Kelly | Conrad & Susan | $7,885.01 | $0.0910151422 | $717.66 |
| King | Charles and Mary | $5,000.00 | $0.0910151422 | $455.08 |
| Kopf | David & Amy | $11,166.76 | $0.0910151422 | $1,016.34 |
| Kopf | Joel Martin | $4,540.00 | $0.0910151422 | $413.21 |
| Kopf | Jonathan and Susan | $5,000.00 | $0.0910151422 | $455.08 |
| Kuhlman | Henry | $400,000.00 | $0.0910151422 | $36,406.06 |
| Lane | Dorothy | $9,934.69 | $0.0910151422 | $904.21 |

| Last Name | First Name | Amount of Loss | Restitution Ratio | Projected Restitution |
|---|---|---|---|---|
| Lawson | Betty | $5,000.00 | $0.0910151422 | $455.08 |
| Lee | Craig & Stacie | $259,232.81 | $0.0910151422 | $23,594.11 |
| Mader | Rick and Dixie | $10,250.00 | $0.0910151422 | $932.91 |
| Mason (Trust) c/o Sharon Pumpley - see below. | Mathew | $40,876.19 | $0.0910151422 | $3,720.35 |
| McGuire | Martha & Robert | $33,300.00 | $0.0910151422 | $3,030.80 |
| McIntyre | Dan & Denise | $131,448.05 | $0.0910151422 | $11,963.76 |
| McIntyre | Lonny | $5,000.00 | $0.0910151422 | $455.08 |
| Meyers | John & Ginny | $339,459.83 | $0.0910151422 | $30,895.98 |
| Morassutti | Joel & Maureen | $47,000.00 | $0.0910151422 | $4,277.71 |
| Morris | Chet & Shirley | $111,000.00 | $0.0910151422 | $10,102.68 |
| Murphy | Phillip and Nan | $88,050.00 | $0.0910151422 | $8,013.88 |
| Murphy | Tracey | $7,089.12 | $0.0910151422 | $645.22 |
| Musselman | Larry and Gavin | $35,000.00 | $0.0910151422 | $3,185.53 |
| Nemec | Nancy and Doug | $10,000.00 | $0.0910151422 | $910.15 |
| Noel | Howard | $70,000.00 | $0.0910151422 | $6,371.06 |
| Oatney | Richard and Bernadine | $81,100.00 | $0.0910151422 | $7,381.33 |
| One for Life | c/o Joe Ulveling - see below | $2,668.27 | $0.0910151422 | $242.85 |
| Oostdyk | Ray Marinus and Jeanne | $252,044.11 | $0.0910151422 | $22,939.83 |
| Overstreet | Johnathan Chad | $20,000.00 | $0.0910151422 | $1,820.30 |
| Owens | Gail (Rhodehouse) | $27,748.33 | $0.0910151422 | $2,525.52 |
| Owens | Martin | $6,110.00 | $0.0910151422 | $556.10 |
| Owens | Wade | $14,500.00 | $0.0910151422 | $1,319.72 |

| Last Name | First Name | Amount of Loss | Restitution Ratio | Projected Restitution |
|---|---|---|---|---|
| Parks | Deborah and her daughter is Leigh Parks | $462,269.00 | $0.0910151422 | $42,073.48 |
| Patten | Alma & Ervin | $53,400.00 | $0.0910151422 | $4,860.21 |
| Powers | Buren Kermit | $142,481.57 | $0.0910151422 | $12,967.98 |
| Pritchett | Richard | $276,334.18 | $0.0910151422 | $25,150.59 |
| Pritchett | Emma Sherron | $94,068.98 | $0.0910151422 | $8,561.70 |
| Prom | Robert & Leigh | $117,829.15 | $0.0910151422 | $10,724.24 |
| Pumpelly | Shannon | $12,567.31 | $0.0910151422 | $1,143.82 |
| Ramsey | John and Donna | $26,900.00 | $0.0910151422 | $2,448.31 |
| Rape | Walt and Lynne | $31,379.88 | $0.0910151422 | $2,856.04 |
| Richardson | Michael | $160,400.00 | $0.0910151422 | $14,598.83 |
| Roberts | Brenda | $9,212.30 | $0.0910151422 | $838.46 |
| Salazar | Maria | $5,000.00 | $0.0910151422 | $455.08 |
| Scott | Jeff (wife - Jennifer) | $32,309.00 | $0.0910151422 | $2,940.61 |
| Shaw | Anna | $26,964.20 | $0.0910151422 | $2,454.15 |
| Shaw | Michael and Sharon | $45,191.76 | $0.0910151422 | $4,113.13 |
| Simmons | Chad | $10,000.00 | $0.0910151422 | $910.15 |
| Smith | Kathleen | $90,677.00 | $0.0910151422 | $8,252.98 |
| Smith | Katie and Sherri | $8,906.65 | $0.0910151422 | $810.64 |
| Smith (Lovelady) | Mary | $41,800.00 | $0.0910151422 | $3,804.43 |
| Snell | Lee Ann Calder and Tom | $11,333.73 | $0.0910151422 | $1,031.54 |
| Trinity Christian Academy | Attn: Calvin Grinstead | $42,000.00 | $0.0910151422 | $3,822.64 |
| Ulveling | Joe and Debbie | $72,668.27 | $0.0910151422 | $6,613.91 |

| Last Name | First Name | Amount of Loss | Restitution Ratio | Projected Restitution |
|-----------|-----------|---------------|-------------------|----------------------|
| Vanderbleek | Jilliane and John | $30,000.00 | $0.0910151422 | $2,730.45 |
| Via | Richard Lewis | $18,681.88 | $0.0910151422 | $1,700.33 |
| Weber | Mark | $93,200.00 | $0.0910151422 | $8,482.61 |
| Whalen | Thomas and Linell | $187,765.65 | $0.0910151422 | $17,089.52 |
| Wilson | Gary and Helen | $61,333.10 | $0.0910151422 | $5,582.24 |
| Zainfeld | Paula and Dennis | $28,010.00 | $0.0910151422 | $2,549.33 |
|  |  |  |  |  |
| TOTAL |  | $7,111,848.91 |  | $647,285.94 |